**ATTORNEY GENERAL OF MARYLAND and State of Maryland**

v.

**Walter Robert DICKSON, et al.**

**Civ. No. PN–86–1128.**

United States District Court, D. Maryland.

June 28, 1989.

J. Joseph Curran, Jr., Atty. Gen. of Maryland, and Peter V. Berns, Asst. Atty. Gen. of Maryland, for plaintiffs.

Daniel F. Goldstein and Andrew D. Freeman, Brown & Goldstein, Baltimore, Md., for defendants Walter Robert Dickson and Douglas Craig Dickson.

Stanley M. Dietz, Poolesville, Md., for defendant Haynes Lee Locklear.

Joseph P. Lamari, Rockville, Md., for defendant Carl R. Wells, Individually and doing business as S & W Auto Sales.

Robert A. Rohrbaugh, Rockville, Md., for defendant Marcus Garvey Guy.

## OPINION

NIEMEYER, District Judge.

This case presents multiple questions relating to liability and damages arising from the "rolling-back" of the odometers of 355 used automobiles. The Attorney General of Maryland and the State of Maryland have sued Walter Robert Dickson and Haynes Lee Locklear for violations of the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. § 1981 *et seq.* ("federal odometer Act"), and the Maryland Consumer Protection Act, Comm. Law Art., § 13–101 *et seq.*, Md.Code. They contend that from 1981 through 1985 Dickson and Locklear, along with others, were involved in a scheme to roll back odometers of used cars and thereafter misrepresent their true mileage to purchasers.

The Attorney General and the State of Maryland have filed a motion for summary judgment on all counts of the complaint, seeking injunctive relief, civil fines, attorneys fees, and, on behalf of consumers, treble damages and restitution. Dickson filed a response in which he contends (1) that plaintiffs' proof fails to establish defendants' liability for altering the odometers of all 355 vehicles in question and fails to show the requisite intent to defraud; (2) that plaintiffs' claims are barred in whole or in part by applicable statutes of limitations; (3) that plaintiffs do not have the right to enforce the relevant statutes against all the transactions in question; and (4) that the damages claimed are excessive and duplicative. Dickson also filed a cross-motion for summary judgment. Locklear has failed to file any response to plaintiffs' motion for summary judgment.

Following a lengthy hearing on the pending motions, the parties submitted further exhibits, affidavits and memoranda. The decisions now made are based on the total record, including the record made by the parties in connection with earlier filed motions for summary judgment.

## I.

## BACKGROUND

In 1985, defendants Dickson, Locklear and others were indicted by a federal grand jury in Maryland and charged in a 34–count indictment with carrying out a scheme to defraud by rolling back the odometers of high-mileage vehicles and selling them with inaccurate lower odometer readings.

On March 11, 1986, Dickson pleaded guilty to Count VII of the indictment, which included allegations that from December 1981 through July 1985 Dickson had been involved in a scheme to defraud consumers by selling them vehicles with rolled-back odometers. Locklear, on the other hand, went to trial and was convicted

on May 10, 1986, of fifteen counts of the indictment, which likewise charged him with scheming to defraud consumers by selling "rolled-back" vehicles. Locklear's conviction was affirmed on appeal. *United States v. Locklear*, 829 F.2d 1314 (4th Cir. 1987).

The complaint in this case, which was filed on April 9, 1986, and later amended, names Dickson, his son Douglas Craig Dickson, Locklear, Carl R. Wells (individually and doing business as S & W Auto Sales), and Marcus Garvey Guy as defendants and co-conspirators. In Counts I and III, respectively, the plaintiffs allege that the defendants altered the odometers of more than 300 motor vehicles in violation of § 1984 of the federal odometer Act and made false disclosures of the odometer readings of these vehicles in violation of § 1988. In Counts II and IV plaintiffs allege that the defendants conspired to violate §§ 1984 and 1988. Finally, in Count V plaintiffs allege that the defendants engaged in deceptive trade practices in violation of the Maryland Consumer Protection Act.

Under the federal odometer Act, plaintiffs pray for permanent injunctive relief to prevent future violations and, on behalf of the purchasers of the cars, demand treble damages and attorneys' fees. Under the Maryland Consumer Protection Act, plaintiffs seek restitution and civil penalties.

Judge Joseph Howard, to whom this case was originally assigned, entered a partial summary judgment in favor of plaintiffs and against Dickson on the issue of liability. The plaintiffs voluntarily dismissed the defendants Carl Wells and Marcus Guy, and the case proceeded to trial before a jury on the issue of liability alone against Douglas Craig Dickson and Locklear. The jury found in favor of Douglas Craig Dickson on all counts and in favor of Locklear on Counts III, IV and V. They found against Locklear on Counts I and II, which allege that he altered the odometer of over 300 used automobiles and engaged in a conspiracy to alter those odometers. No finding was made by either Judge Howard or the jury with regard to the identity and precise number of automobiles involved.

Thus only Dickson and Locklear remain as defendants, Dickson on all counts and Locklear on Counts I and II. The plaintiffs seek to impose liability and damages on both of these defendants for 355 automobiles identified in the papers supporting the plaintiffs' motion for summary judgment. Because defendant Locklear has elected not to respond to plaintiffs' motion for summary judgment, the arguments that are attributed to the defendants have been raised only by Dickson.

## II.

### NEXUS OF 355 VEHICLES TO THE CONSPIRACY

Dickson first argues that plaintiffs have failed to prove that he is liable for the violations alleged in connection with the 355 cars listed in plaintiffs' exhibits to their summary judgment motion. He suggests that Judge Howard's ruling on the issue of liability was based on his guilty plea to Count VII of the indictment (a single count of mail fraud), and that there has been no adjudication of his liability with respect to any car other than the one mentioned in that count.

Dickson's argument highlights the logistical difficulties presented by plaintiffs' instant motion. Judge Howard's ruling on plaintiffs' motion for partial summary judgment on the issue of liability established Dickson's participation in a conspiracy and his liability for violations of the federal odometer Act and the Maryland Consumer Protection Act. It did not establish, however, which vehicles were involved in the conspiracy and on how many occasions the statutes were violated. It must therefore still be determined whether the 355 vehicles listed in Exhibit 8A to the plaintiffs' motion have been sufficiently linked to the defendants.

■ Both defendants have been found liable for conspiring to violate the federal odometer Act. Judge Howard entered summary judgment on the issue of liability against Dickson and a jury found that

Locklear violated 15 U.S.C. § 1984 (which prohibits the alteration of odometers) and that he participated in a conspiracy to violate that section. It is well established that members of a conspiracy are jointly and severally liable for the actions committed by their co-conspirators during the course of and in furtherance of the conspiracy. *See, e.g., United States v. Socony–Vacuum Oil Co.,* 310 U.S. 150, 253–54, 60 S.Ct. 811, 858, 84 L.Ed. 1129 (1940); *Halberstam v. Welch,* 705 F.2d 472, 481 (D.C.Cir.1983); *Duval v. Midwest Auto City, Inc.,* 425 F.Supp. 1381, 1386, 1388 (D.Neb.1977), *aff'd,* 578 F.2d 721 (8th Cir.1978) (holding conspirators who violated federal odometer law jointly and severally liable for the acts of their co-conspirators). Therefore, both Dickson and Locklear will be held liable for violations of the federal odometer Act committed by members of their conspiracy during the course of and in furtherance of the conspiracy.

Dickson's argument that Judge Howard's partial summary judgment ruling on the issue of liability was limited to the single violation listed in Count VII of the indictment, and did not include a finding of involvement in a conspiracy, will not be sustained for two reasons.

First, the motion which Judge Howard granted was based on the entire complaint, which included allegations of Dickson's involvement in a conspiracy responsible for rolling back the odometers of over 300 vehicles. Plaintiffs had submitted carefully prepared documentation establishing Dickson's involvement in the conspiracy, and Dickson failed to challenge this documentation.

Second, Dickson's admissions made during his plea to Count VII of the indictment, upon which Judge Howard relied, encompassed more than the one vehicle referred to in that count. The first paragraph of Count VII of the indictment realleged the allegations in Count I dealing with Dickson's involvement in a scheme to defraud consumers by selling them vehicles with rolled-back odometers. Judge James Miller, who received Dickson's guilty plea, made it clear that these allegations were incorporated in Count VII and that defendant's guilty plea included a plea of guilty to these allegations. When granting plaintiffs' motion for summary judgment on the issue of liability, Judge Howard made it clear that he was treating Dickson's guilty plea as an admission of his involvement in a conspiracy to defraud:

[Dickson] pled guilty to Count seven of an indictment ... which charged him with violation of 18 U.S.C., Section 1341. *This count expressly incorporated allegations of the defendant's direct and substantial involvement in an odometer rollback scheme.* Defendant's voluntary guilty plea as to this count is treated as an admission by this Court.

After having requested the defendant to set forth material facts that controvert his prior admissions, the Court finds that no such facts were forthcoming.

Accordingly, pursuant to Rule 56, plaintiff's motion for partial summary judgment as to Defendant Walter Dickson's liability is granted. (Emphasis added.)

Dickson argues that even if an allegation of a conspiracy to defraud was included in the count to which he pleaded guilty, because the conspiracy was not an essential element of his plea, plaintiffs cannot rely on his guilty plea to establish liability as to the vehicles listed in the exhibits to the motion for summary judgment. He cites *United States v. Wight,* 819 F.2d 485, 487–88 (4th Cir.1987) as support for this argument. In *Wight,* the Fourth Circuit held that a defendant's guilty plea to a criminal information charging him with accepting $70,107 in gratuities through his government post did not estop him from contesting the amount of the gratuities in a subsequent civil case because the amount of money involved was not an essential element of the offense.

In this case, there has been no ruling that Dickson is estopped from contesting his involvement in a conspiracy. In fact, Judge Howard specifically stated that his ruling on Dickson's liability was not based upon any application of the doctrine of collateral estoppel; rather, he treated Dick-

**1096**

son's guilty plea as an admission. Because Dickson did not come forward with facts to controvert that prior admission, Judge Howard entered summary judgment against him. Once again, on the motions currently before the Court, defendants have failed to present evidence that raises a genuine question of fact as to their involvement in the conspiracy.

■ Although the Court rejects Dickson's contention that he has not been found liable for being involved in a conspiracy, his contention that earlier rulings have not determined the specific vehicles that were involved in the conspiracy and the number of violations committed by the conspirators is well taken. The Court must determine at this time whether plaintiffs have linked the vehicles in question to defendants' conspiracy and thereby established each defendant's liability for the violations associated with each vehicle.

The record shows that beginning in 1981 Dickson, Douglas Dickson, Haynes Locklear, Carl Wells, and Marcus Guy entered into a conspiracy to roll back the odometers and misrepresent the actual mileage of over 300 vehicles. Generally, Locklear, doing business as Riggs Motors, bought high mileage used vehicles from dealers in Maryland and suburban Virginia and received a written mileage disclosure statement for each vehicle. Locklear then transferred the vehicles to one of the Dicksons or to S & W Auto Sales. At some point either Locklear or one of the Dicksons altered the odometers on the vehicles or had someone alter the odometers for them. Marcus Guy reset the odometers of many of the vehicles. One of the Dicksons would then obtain certificates of title for the vehicle, which falsely represented the vehicle's actual mileage, and then sell the vehicle.

Plaintiffs have gone to great lengths to link each of the 355 cars at issue with the defendants in this conspiracy. The Consumer Protection Division of the Office of the Attorney General has collected and submitted to this Court motor vehicle records and affidavits documenting the chain of ownership of the 355 vehicles. Christopher Waldt, an investigator with the

Consumer Protection Division, has analyzed these records and prepared summary exhibits. Exhibit 8A to the motion for summary judgment lists all of the vehicles by record number and provides, with respect to each vehicle the following information: the mileage when the vehicle was allegedly acquired by defendants; the mileage when the vehicle was allegedly sold by the defendants; which of the alleged conspirators appear in the vehicle's chain of title; the state where the vehicle was titled before being sold; the state where the vehicle was titled by the consumer after the purchase; and the date of the purchase by the consumer. Exhibit 8B provides the identical information for 240 vehicles (of the 355 total) for which plaintiffs were able to obtain affidavits from the purchasers. Plaintiffs have also prepared a table summarizing some of the data from Exhibit 8A.

The table shows that the names of both Dickson and Locklear appear in the chain of title of 186 of the 355 vehicles listed in Exhibit 8A and that the chain of title of 111 of the remaining vehicles contains either Dickson's name *or* Locklear's name. In other words, 297 of the vehicles have in their chain of title either Locklear's name, Dickson's name, or both. Defendants are also implicated in the sale of the remaining 58 vehicles, even though their names do not appear in the vehicles' chains of title. Fifty-one of the remaining 58 vehicles have Douglas Dickson's name in their chain of title. Plaintiffs argue that Douglas Dickson's involvement implicates defendants because defendant Dickson admitted during his son's trial that he was involved with 99% of the cars which had Douglas Dickson's name in the chain of title.

Plaintiffs link the remaining seven vehicles to defendants in the following manner. Six of these seven vehicles have the name "Bledsoe" in their chain of title. This name, which appears in the chain of title of 15 of the 355 vehicles, was used by defendants to escape detection by the authorities. Moreover, those titles which used the name Bledsoe used addresses which were regularly used by Dickson for purposes of titling vehicles. The final re-

maining vehicle had the name S & W Auto Sales in the chain of title. S & W, which was the trade name used by Carl Wells, a named co-conspirator, also appears in the chain of title of 173 of the 355 vehicles in Exhibit 8A. Defendants have admitted that S & W is one of the instrumentalities they regularly used to escape detection.

In opposition to plaintiffs' motion for summary judgment, Dickson has filed a three-paragraph declaration which denies his involvement with most of the 355 vehicles. In the declaration, Dickson first states that he cannot remember most of the cars for which plaintiffs seek to hold him liable and that he cannot refresh his recollection because his records were destroyed by a fire at his home. Dickson then declares that he was not involved in a roll back conspiracy prior to May, 1985, and that prior to that date, he did not know that any car with which he was involved had had its odometer rolled back. Finally, Dickson asserts that as to those cars sold in or after May 1985, many were sold by others, outside of the conspiracy in which he was involved, without his participation in their purchase, sale, or odometer alteration.

The Court notes that Dickson denies liability only in a totally conclusory fashion. This is not surprising because his declaration is directly undermined by his own admissions of more specific criminal conduct from as early as 1981, in which he described rolling back about 100 odometers himself and redocumenting those rolled back by other co-conspirators. His declaration also fails to address the specific vehicle-by-vehicle documentation submitted by plaintiffs to which he offers no response. Thus, the Court concludes that the records of prior proceedings, which contain defendants' admissions, and the affidavits and exhibits filed by plaintiffs in support of their motion for summary judgment link the 355 vehicles in Exhibit 8A to the conspiracy alleged in the complaint and implicate defendants in that conspiracy.

Once a motion for summary judgment has been adequately supported, the non-movants must come forward with more than conclusory denials. They must present evidence to demonstrate the existence of a genuine issue for trial:

> Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.... [T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986).

Neither Dickson nor Locklear has come forth with *specific facts* to show the existence of a genuine issue as to any material fact. Dickson's conclusory denial does not meet *Anderson*'s standards for defeating a summary judgment motion.

Dickson's statement that he was unaware of all the transactions imputed to the conspiracy is of little moment. As a co-conspirator who knowingly participated in the conspiracy, he is imputed with the acts of his conspirators undertaken in furtherance of the conspiracy. Likewise, his statement that he could not recall the transactions without his records (which he claims were burned in a fire) does not raise a genuine issue of fact. The Court concludes that plaintiffs have amply demonstrated the connection between the conspiracy and the 355 motor vehicles that had rolled-back odometers and have amply demonstrated defendants' connection to this conspiracy.

### III.

### INTENT TO DEFRAUD

Section 1990a(a) of the federal odometer Act permits the Attorney General of Maryland to sue violators of the Act to enjoin future violations and to recover, on behalf of the victims, the amounts to which the

victims would be entitled under § 1989. In order to establish liability under § 1989 plaintiffs must show that defendants violated the federal odometer Act *with the intent to defraud.* Defendant Dickson, noting that intent to defraud is a necessary element of plaintiffs' case, argues that plaintiffs cannot be granted summary judgment because no such evidence of intent to defraud has been produced.

Contrary to defendants' contention, the record contains ample evidence establishing an intent to defraud. At his rearraignment on March 11, 1986, in the course of pleading guilty to Count VII of the indictment against him, defendant Dickson admitted to the following statement of facts:

> [Y]ou, W.R. Dickson, and Locklear, D.C. Dickson and Wells and other persons unlawfully, willfully, and knowingly devised and *intended to devise a scheme and artifice to defraud* and to obtain money and property by means of false and fraudulent pretenses, representations and promises as to the true mileage of used cars sold by you and others.
>
> \* \* \* \* \* \*
>
> [A]s a part of the scheme and artifice to defraud ... you [W.R. Dickson], Locklear, and D.C. Dickson would and did cause to be altered, reset and rolled back the odometers on hundreds of used cars ... so that the odometers reflected a substantially lower mileage than, in fact, was true.
>
> \* \* \* \* \* \*
>
> [I]t was further a part of the scheme and artifice to defraud that you [W.R. Dickson] and your son ... sold the used cars to private buyers. At the time ... the cars' odometers did not reflect, allegedly, the true mileage on the used cars, but rather reflected substantially lower mileage and ... you [W.R. Dickson] and your son made false representations to the private buyers at the time of the sale about the ownership history and prior use of the used cars. (Emphasis added.)

Later in the same dialogue with Judge Miller, Dickson testified under oath as follows:

> The Court: And did you enter into a scheme and artifice to defraud purchasers of automobiles, used automobiles by, in effect, setting the mileage odometers back?
>
> Mr. Dickson: Yes.
>
> The Court: And you entered into the scheme as generally alleged in the first count of this indictment; is that right?
>
> Mr. Dickson: That is correct.
>
> \* \* \* \* \* \*
>
> The Court: *And you knew what you were doing when you were involved in this scheme;* is that correct?
>
> Mr. Dickson: Yes. (Emphasis added.)

When Judge Howard granted plaintiffs' motion for summary judgment against defendant Dickson on the issue of liability on April 7, 1987, he treated Dickson's plea to Count VII of the indictment, which "expressly incorporated allegations of the defendant's direct and substantial involvement in an odometer rollback *scheme*," as an admission which supported liability on all counts of the complaint, including allegations that "the alterations alleged ... were performed *with the intent to defraud.*"

In addition to confessing guilt before Judge Miller during his rearraignment, the record shows that Dickson testified fully to the entire conspiracy at Locklear's trial. He described the arrangement pursuant to which 400–500 used vehicles were redocumented and thereafter transferred from Locklear to Dickson. Dickson admitted that he rolled back somewhat more than 100 vehicles and that he knew Locklear had rolled back 30–40% of the remainder of the 400–500 vehicles. He also described the involvement of his son, Douglas Dickson, as well as Carl Wells and Marcus Guy. He has not come forward now to dispute any of these admissions.

■ Even were the conclusion reached that this record amounted only to a showing of gross negligence or reckless disregard with respect to incorrect odometer readings when making disclosure statements, an inference of intent to defraud may be drawn. *See, e.g., Ryan v. Edwards,* 592 F.2d 756, 761 (4th Cir.1979);

*Tusa v. Omaha Auto Auction, Inc.,* 712 F.2d 1248, 1253–54 (8th Cir.1983); *Nieto v. Pence,* 578 F.2d 640, 642 (5th Cir.1978). Because Dickson was involved in a scheme to defraud, and because he *knew* that so many of the cars he sold had incorrect odometer readings, he acted, in the least, with reckless disregard with respect to the accuracy of the odometer readings on the 355 cars involved in this action.

An intent to defraud on the part of defendants can also be inferred from the fact that the odometer readings of the 355 vehicles changed while the vehicles were under the dominion of the conspirators. In *Delay v. Hearn Ford,* 373 F.Supp. 791, 796 (D.S.C.1974), the court explained:

All that is required of a purchaser before recovery will be allowed is that a change in the odometer reading has occurred and that the seller has failed to disclose the change. An intent to defraud arises from the proof of the foregoing in the absence of an explanation of the odometer change.

*See also Shore v. J.C. Phillips Motor Co.,* 567 F.2d 1364 (5th Cir.1978); *Bryant v. Thomas,* 461 F.Supp. 613 (D.Neb.1978).

In this case, however, inferences are not needed to prove intent. The evidence is direct, admitted and uncontroverted.

## IV.

### SITUS OF THE VIOLATIONS

■ The federal odometer Act empowers the Attorney General of Maryland to sue only with respect to violations which "occurred" in the State of Maryland. 15 U.S.C. § 1990a(a). Although plaintiffs have established that both defendants altered the odometers of 355 vehicles in violation of 15 U.S.C. § 1984, the Attorney General can recover for only those violations which occurred in Maryland. Therefore, the situs of each violation must be determined.

Section 1984 of the federal odometer Act provides, in part:

No person shall ... alter or cause to be ... altered the odometer of any motor

vehicle with intent to change the number of miles indicated thereon.

Each time the defendants altered an odometer, a separate violation of the Act occurred. Therefore, for purposes of demonstrating where the violations of § 1984 occurred, the plaintiffs must show where each alteration took place.

The record does not document by direct evidence where each alteration took place. To make such a showing directly would ordinarily be an impossible task. It is not often that a criminal will permit a third-party observer to document his illegal activities—extraordinary care is usually taken by the criminal to conceal his conduct. Only by inference and circumstantial evidence are matters such as these generally proved.

The Attorney General argues that one may infer from the totality of the facts in this case that the odometer alterations occurred in Maryland. He notes that the record shows that (1) Dickson admitted selling cars from, among other places, his home in Silver Spring, Maryland; (2) Locklear bought and sold cars under the name Riggs Motors operating in Chillum, Maryland; (3) Marcus Guy rolled back cars for Locklear in Chillum, Maryland; and (4) Dickson often had odometers rolled back in the parking lot of a Pantry Pride on Piney Branch Road in Maryland.

There is other evidence in the record from which one could infer that the odometers were altered in Maryland. Dickson has admitted that the conspirators hired Marcus Guy to roll back odometers. At Locklear's criminal trial, Guy testified that most of the cars he rolled back for Locklear were located at Locklear's home in Chillum, Maryland. Walter Dickson testified at Locklear's criminal trial that he often saw Guy working at Locklear's home and at Locklear's shop, Riggs Motors, also located in Chillum.

Dickson testified at his son's civil trial that Guy was the only technician he ever used to roll back odometers. He further testified that Guy would do the work wherever the vehicle had been left by Locklear. Locklear most often left the vehicles in a

lot of a Pantry Pride on Piney Branch Road in Maryland. Some of the other places Locklear would leave the vehicles were Locklear's home and his place of business.

The specific evidence which places all the known roll back sites in Maryland, and the established facts that the defendants' residences and business were located in Maryland, as were the bases of operation of the co-conspirators, constitute circumstantial evidence that all the violations of § 1984 occurred in Maryland. Because there is no contradicting evidence the Court finds that all odometer alterations that have been shown occurred in Maryland.

To permit circumstantial evidence to prove that all violations of § 1984 occurred in Maryland is particularly acceptable here because the direct evidence implicates the defendants in 355 violations of § 1984, leaving open only the formal question of who will act as custodian for the claims and recoveries on behalf of the victims. In other words, defendants' liability would not be reduced if it turned out that some of the vehicles were altered outside of Maryland. The only outcome of such an eventuality would be that the claims for those vehicles would have to be brought by the Attorney General of another state.

Defendants have advanced no evidence to rebut the claim that the violations of § 1984 occurred in Maryland, nor have they suggested as a general matter that any cars were rolled back outside of Maryland. Their only contention, that the Attorney General has failed in his proof of situs, is therefore rejected.

Count II, which is based on § 1986 of the federal odometer Act, alleges that defendants conspired to violate § 1984. Section 1986 provides that "[n]o person shall conspire with any other person to violate section 1983, 1984, 1985, 1987, or 1988 of this title." Because the defendants conspired *in Maryland* to violate § 1984, the Attorney General of Maryland is empowered to sue to recover for violations of § 1986.

Counts III and IV, for which only Dickson has been found liable, are based respectively on (1) the failure to make accurate disclosure of mileage in violation of § 1988, and (2) conspiring to violate § 1988.

■ Section 1988 prohibits a transferor of a motor vehicle from making a false statement to a transferee in violation of rules adopted under the section, which are set forth at 49 C.F.R. § 580.1 *et seq.* These rules require that a transferor furnish the purchaser of a motor vehicle with a written statement disclosing accurate odometer information. If the state where the motor vehicle is registered makes adequate provision for disclosure of odometer information on certificates of title, the transferor is permitted to satisfy the disclosure requirements on the certificate of title. A violation of § 1988 therefore is the failure to make accurate disclosure, and the situs of the violation is where the inaccurate disclosure was made or where the sale was made without disclosure.

The record shows that a significant number of the 355 vehicles were titled to consumers in states other than Maryland, including Delaware, Massachusetts, Michigan, Pennsylvania, Virginia, and West Virginia. In some instances the state where the vehicle was titled upon purchase is not known. It is not known where the disclosures were made in these instances, and no reliable inference can be drawn from the evidence presented.

■ With respect to vehicles titled in Maryland, however, the Court can infer that the inaccurate disclosure or failure to disclose occurred in Maryland. The facts that the odometers on these vehicles were rolled back in Maryland, that the bases of operations of the conspiracy were in Maryland, and that the purchasers titled the vehicles in Maryland are circumstantial evidence that the failure to make accurate disclosure took place in Maryland. No evidence has been offered to the contrary. Thus, the claims of the Attorney General against Dickson on vehicles titled in Maryland are supported by the additional ground that he violated 15 U.S.C. § 1988. Claims on vehicles titled by purchasers in states other than Maryland have not been proved.

With respect to Count IV, the count alleging a conspiracy to violate § 1988, the violation did occur in Maryland because that is where the co-conspirators were located and where the conspiracy took place, notwithstanding the fact that some acts in furtherance of the conspiracy may have occurred outside of Maryland. The Attorney General of Maryland therefore is entitled to seek recovery against Dickson for violation of § 1986.

Count V of the amended complaint is based on the Maryland Consumer Protection Act, Comm. Law Art., § 13–303, Md. Code, which prohibits a person from engaging in any unfair or deceptive trade practice in the sale of consumer goods. Although the Act does not specify the connection that a deceptive practice must have with the State of Maryland to fall within the purview of the Act, there must be a substantial state interest in the conduct. To determine the interest of the state in conduct, the Court will ordinarily be guided by the rule that "unless an intent to the contrary is expressly stated, acts of the legislature will be presumed not to have any extraterritorial effect. *See Chairman of Board v. Waldron,* 285 Md. 175, 183–84, 401 A.2d 172 (1979) (quoting *Sandberg v. McDonald,* 248 U.S. 185, 195, 39 S.Ct. 84, 86, 63 L.Ed. 200 (1918)). The intent of the Maryland General Assembly with respect to the Maryland Consumer Protection Act was to "provide minimum standards for the protection of consumers *in the State.*" Md. Com. Law Code Ann. § 13–103(a) (1983) (emphasis added). If conduct amounting to a violation occurs entirely in the state, it is obviously subject to state enforcement. If, on the other hand, the conduct takes place in part out of the state, the state interest would need to be determined from the specific conduct in this state or the impact that the conduct had on Maryland consumers.

Section 13–303 of the Maryland Consumer Protection Act enumerates an extensive list of practices, each of which amounts to a deceptive practice. Common to each practice is the notion that a deceptive statement is communicated to a consumer in the state. Thus, the practice of rolling-back is of itself insufficient to constitute a violation within the scope of the Act. There must be some form of communication to a consumer or potential consumer in the State.

While the Court has found that all "rolling-back" occurred in Maryland, the record does not specify for each transaction where the solicitation of the consumer occurred or where the sale took place. With respect to those transactions in which the vehicle was titled in the State, the Court concludes that the circumstantial evidence establishes, in the absence of evidence to the contrary, that the violation occurred in Maryland. On all other transactions, the record is insufficiently developed to enter summary judgment in favor of plaintiffs for violations of the Maryland Consumer Protection Act.

## V.

### STATUTE OF LIMITATIONS

On June 5, 1986, shortly after the complaint in this action had been filed, defendant Dickson filed a motion to dismiss, arguing that plaintiffs' claims were barred by the applicable statutes of limitations. In denying this motion on March 12, 1987, Judge Howard stated in an order that the court had determined that the applicable statute of limitations was tolled from running until plaintiffs discovered the existence of the alleged violations in September, 1985. However, the order stated:

> To the extent that the affirmative defense of expiration of the statute of limitations may be viable as to specific claims of certain consumers who purchased automobiles from these defendants, the defendants may reassert this defense in an appropriate motion after discovery is complete, or during the damage phase at trial, assuming liability is established.

Defendants now reassert their argument that plaintiffs' claims under both federal and state law are either completely or partially barred by the statute of limitations.

Section 1990a(b) of the federal odometer Act states that an action under § 1990a (authorizing suits by state attorneys general) "may be brought within two years from the date on which the liability arises...." This two-year period, however, is subject to the discovery rule governing federal causes of action, which provides that statutes of limitation applicable to actions sounding in fraud begin to run either from the date the fraud is discovered or from the date that it could have been discovered in the exercise of reasonable diligence. *See, e.g., Byrne v. Autohaus on Edens, Inc.,* 488 F.Supp. 276, 280 (N.D.Ill. 1980). The party seeking the benefit of the discovery rule bears the burden of proving that the circumstances warrant its application. *See, e.g., Lukenas v. Bryce's Mountain Resort, Inc.,* 538 F.2d 594 (4th Cir. 1976); *Clift v. UAW,* 818 F.2d 623 (7th Cir.1987).

Although many vehicles were sold before April 9, 1984 (i.e. over two years before the complaint was filed), plaintiffs assert that they did not discover the alleged violations until September 1985 and argue that the running of the two-year limitation period was tolled until that time. Plaintiffs have filed the affidavit of Steven J. Cole, Chief of the Consumer Protection Division of the Office of the Attorney General, in support of their assertion that the Division did not discover defendants' scheme to roll back odometers until September of 1985. Although the affidavit stated that the Consumer Protection Division had received information about the scheme in July and September of 1985, it did not explicitly preclude the possibility that the Division had also received information about it prior to that time. However, at oral argument plaintiffs' counsel represented that, in fact, plaintiffs received no information about the conspiracy prior to July 1985.

Dickson argues that many of the alleged violations were discovered earlier than July 1985. In support of this argument, Dickson has filed a copy of the deposition of Eugene D. Frantz, an investigator with the Maryland State Motor Vehicle Administration, a division of the Maryland Department of Transportation. Frantz testified that he began an investigation of Douglas Dickson when he received a report from Trooper Samuel Summers of the Motor and Safety Enforcement Division of the Maryland State Police suggesting Dickson's involvement in odometer tampering. By November, 1983, Frantz had identified approximately 25 vehicles sold by Douglas Dickson which had had their odometers rolled back and had submitted a statement of charges against Douglas Dickson with the state's attorney's office in Frederick County. Dickson argues that the knowledge of the state trooper, the Motor Vehicle Administration investigator, and the state's attorney's office in Frederick County should be imputed to the Attorney General. He cites *United States v. Kass,* 740 F.2d 1493 (11th Cir.1984), as support for this argument.

In *Kass,* the United States brought suit against Dr. Kass to recover amounts the doctor had improperly received under the Medicare program. The overpayments had been made by Blue Shield of Florida, one of the carriers which administers the program. Blue Shield of Florida was contractually obligated to the Secretary of Health and Human Services to receive claims, review them to insure their reasonableness, determine coverage, and make payments from a Medicare trust fund. Blue Shield had reviewed the claims submitted by Dr. Kass and determined that he had over-utilized Medicare reimbursement. When, over six years later, the government brought suit against Dr. Kass, the doctor contended that the suit was barred because the government failed to bring suit within the six-year time period provided by the applicable statute. The court agreed, holding that Blue Shield was the government's agent and that the government knew or should have known of the improper payments when Blue Shield found out about them.

The instant case is distinguishable from *Kass* because none of those who knew of the alleged odometer rollbacks were acting as agents of the Attorney General's office. The Attorney General is the one charged with enforcement of both the federal odom-

eter Act and the Maryland Consumer Protection Act. The persons who were aware of defendants' conduct did not report to the Attorney General and were not even in his department. The investigation in 1983 carried out by the state trooper and the MVA investigator was undertaken to prepare a report which was sent to the state's attorney's office in Frederick, Maryland, for a possible criminal proceeding. The knowledge imputed to the State's Attorney for Frederick County, who is not part of the Attorney General's operation, but rather an independent elected official, is not imputable to the Attorney General. In contrast, in *Kass*, Blue Shield was committed to act as the government's agent by contract. The parties' arrangement called for Blue Shield to administer every aspect of the claims procedure, from receiving the claims to making payment from the appropriate fund.

Because the Attorney General is first charged with knowledge of violations in the summer of 1985, this action, which was brought in April of 1986, is not time-barred under the federal odometer Act.

■ Dickson also argues that the complaint filed on April 9, 1986, did not toll the running of limitations because the allegations in the complaint were too general and failed to identify the particular vehicles for which the allegations are made. The complaint alleges:

> For the period of time beginning on or before December 1981 and continuing thereafter, the defendants altered, reset or disconnected odometers; caused odometers to be altered, reset or disconnected; misrepresented the true mileages or enabled others to misrepresent the true mileages of more than three hundred (300) vehicles; and/or unlawfully conspired together in furtherance of these acts.

Not until the time of discovery did defendants receive the serial numbers and descriptions of the "more than 300 vehicles" involved. They contend that only on receipt of this discovery was the statute tolled.

The Court disagrees. The complaint adequately put defendants on notice of the allegations against them. The plaintiff had no obligation to set forth the details of each transaction in the complaint when they well could and did obtain all of the information in discovery. In these circumstances it is the filing of the complaint that tolls limitations and not the receipt of discovery that particularizes the complaint.

■ The limitation periods for bringing claims under the Maryland Consumer Protection Act differ with the relief requested. The Attorney General has requested both restitutionary relief and civil fines. The general period of limitations on Maryland state claims, which includes the claims for restitutionary relief, is three years. Cts. & Jud. Proc. Art., § 5–101, Md.Code. This period begins to run only when the plaintiff has actual knowledge of his cause of action or has knowledge that is implied from circumstances which ought to put a person of ordinary prudence on inquiry, thus charging him with notice of all facts that such an investigation would in all probability have disclosed if it had been properly pursued. *Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677 (1981). The contention cannot be properly made that claims for restitution are barred when knowledge of them is first chargeable to the Attorney General in the summer of 1985, and the instant suit was commenced in April 1986.

■ The limitations with respect to fines, however, is governed by Courts Art., § 5–107, Md.Code, which provides:

> A prosecution or suit for a fine, penalty or forfeiture shall be instituted within one year after the offense was committed.

Dickson urges that the Court grant summary judgment in his favor on all requests for fines relating to vehicles which were sold over one year before this action was filed.

Plaintiffs first argue that their cause of action under state law is entitled to sovereign immunity against any limitations defense, citing *Washington Suburban Sanitary Commission v. Pride Homes, Inc.*, 291 Md. 537, 539–540, 435 A.2d 796 (1981).

While it is true that sovereign immunity would appear to protect the state against a limitations defense, that immunity can be waived by the legislature. *See, e.g., Dunne v. State,* 162 Md. 274, 159 A. 751 (1932). However, a court should hold that immunity from suit has been waived only when such a conclusion is a necessary and compelling implication of a legislative act. *Id.* at 288–89, 159 A. 751. The Court concludes in this case that such is the inference that must be drawn from § 5–107.

Section 5–107 states that a prosecution or suit for a fine shall be instituted within one year of the date of the offense. The fact that the statute refers to a "prosecution," which is almost always brought by a government, suggests that the legislature intended to waive the government's immunity to a statute of limitations defense in actions for fines. The argument that "prosecution" could be referring to private suits is undermined by the fact that the statute explicitly applies to both prosecutions *and* suits. That both prosecutions and suits are mentioned suggests that the legislature intended to include within the scope of the statute both criminal and civil actions for penalties, fines and forfeitures. *See Nelson v. Real Estate Comm'n,* 35 Md. App. 334, 370 A.2d 608 (1977) ("prosecution" refers to a criminal action) (dictum). The government's immunity is waived with respect to criminal proceedings for fines, and the statute offers no basis for suggesting that civil actions for fines should be treated differently. Therefore, this Court rejects plaintiffs' argument that their action for fines is entitled to immunity from a statute of limitations defense.

■ Plaintiffs also argue that if their action is subject to a statute of limitations defense, the relevant limitation is not the one-year limitation of § 5–107, which is applicable to fines, but the 12–year limitation of § 5–102, which is applicable to "specialties."

A "specialty," though never defined by the legislature, has been judicially defined as and is generally understood to be, "a legal instrument under seal." *See General*

*Petroleum Corp. v. Seaboard Terminals Corp.,* 19 F.Supp. 882, 883–84 (D.Md.1937). Plaintiffs contend that their action under the Maryland Consumer Protection Act is a "specialty by statute," a seldom-used term denoting a legislatively-created cause of action that did not exist at common law. The defendants, on the other hand, contend that despite volumes of statutory causes of action, no published Maryland case in almost 50 years (and almost no case published elsewhere) has found any statutory liability to be a specialty. The only published Maryland cases to find that statutory causes of action can be considered specialties were *Sterling v. Reecher,* 176 Md. 567, 6 A.2d 237 (1939); *Mattare v. Cunningham,* 148 Md. 309, 129 A. 654 (1925); and *Ward v. Reeder,* 2 H. & McH. 145 (1785). The Court agrees with the defendants that those cases would not be followed today by the Court of Appeals of Maryland. The more rational approach leads to the conclusion that the reference in the statute to "other specialties" was not intended to apply to every liability created by statute, many of which have their own limitations or assume a general three-year period. *See Warnick v. Bethlehem–Fairfield Shipyard, Inc.,* 68 F.Supp. 857, 861–62 (D.Md. 1946). Accordingly, the one-year period will apply to the plaintiffs' claims for fines under the Maryland Consumer Protection Act.

■ The period of limitations for fines, penalties and forfeitures under § 5–107 begins to run from the date the offense "was committed," which is the standard adopted from limitations in criminal matters, rather than from the date the action "accrues." Thus, the period of limitations under § 5–107 begins to run when the offense, for which the fine is sought, is complete, regardless of whether the Attorney General had knowledge of the commission of the offense at that time. The offense is complete when each element has occurred. In this case each deceptive practice is an offense for which a fine is sought, and the latest date that can be urged for the occurrence of its deceptive practice is the date the sale was consummated with the con-

sumer. Thus, the claims on all sales which were consummated more than one year before April 9, 1986, will be barred by the one-year period.

A review of the record discloses that 18 transactions were consummated within the period of limitations, and the claim for fines with respect to the others are barred. Thirteen (of the 18) vehicles were titled by the consumer in Maryland upon purchase.

## VI.

### REMEDIES

■ Plaintiffs seek $1,500 each for 355 violations of the federal odometer Act pursuant to § 1989(a), which provides:

Any person who, with intent to defraud, violates any requirement imposed under this subchapter shall be liable in an amount equal to the sum of—

(1) three times the amount of actual damages sustained or $1,500, whichever is the greater; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court.

No actual damages have been claimed or proved, and plaintiffs affirmatively state that they do not seek recovery based on actual damage. The Court suspects that plaintiffs have chosen to request the statutory minimum recovery of $1,500 for each violation because of the logistical difficulty of proving actual damages for each of the 355 purchasers.

To deter odometer tampering, the Act provides remedies that assure not only that victims are compensated fully for any damage caused but also that violators are penalized by the trebling of the damage or, in the absence of damage, by awarding a minimum amount of $1,500. The Act also provides for reasonable attorney's fees.

When the victim proves no damage, he receives the minimum statutory amount of $1,500 as a penalty. Should he, however, prove damage in the action, whether under the Act or on a common law theory, he ought not to receive automatically the $1,500 penalty, but rather should receive a sum which is the damage trebled or $1,500, whichever is greater. In that circumstance, to avoid receiving compensatory damages twice, he could not recover under other theories of compensatory damage.

In this case, because damage has not been proved and because plaintiffs are claiming the statutory minimum of $1,500, the Court will award to the Attorney General $1,500 for each of the 355 violations for which claim is made as custodian for the victims, for a total of $532,500. Under § 1990a(a)(1), the Court will also make permanent the preliminary injunction entered earlier, and reasonable attorney's fees and costs will be awarded as provided by § 1989(a)(2).

Plaintiffs also make claim under Count V of the complaint for restitution and civil fines under the Maryland Consumer Protection Act, §§ 13–406(c)(2) and 13–410(a).

■ Section 13–406(c)(2) of the Consumer Protection Act allows a court to "enter any order of judgment necessary to ... [r]estore to a person any money or real or personal property acquired from him by means of any prohibited practice...." Plaintiffs assert that this section allows the Court to order defendants to return the full purchase price paid by each of the consumers who filed affidavits, without setoff or without return of the vehicle. In most of these instances the consumers have had the use of their vehicles for years. To give them back the gross purchase price as requested by plaintiffs without requiring return of the vehicle or without setoff would amount to a windfall. In some cases the vehicles have been resold by the consumers so that a return of the purchase price might even amount to a double return. Thus, to restore the purchase price to the purchasers without applying principles of restitution would be punitive.

While § 13–406(c)(2) does not explicitly require plaintiffs to tender back to defendants the benefits received by the consumers, it is apparent that the section is not intended to be punitive, but rather to restore victims to their position before the

transaction. *See Consumer Protection Division v. Consumer Publishing Co.,* 304 Md. 731, 776, 501 A.2d 48 (1985). Explaining the restitution remedy that may be imposed on the agency level under § 13–403(b), the Court of Appeals of Maryland in *Consumer Publishing* stated at 777, 501 A.2d 48:

> [T]he plaintiff is generally required to disaffirm the contract and restore what he received under the bargain, or at least offer in good faith to restore it, before the defendant is required to restore what he received. [Citations omitted.] This requirement has been relaxed when the thing received by plaintiff is expected to be consumed, or from its very nature cannot be returned, or is worthless.

The restitution remedy under § 13–403(b) discussed in *Consumer Publishing* is the same remedy that is authorized in § 13–406(c) for entry by a court. *State v. Andrews,* 73 Md. App. 80, 85 n. 3, 533 A.2d 282 (1987).

It is also apparent from a review of the Consumer Protection Act itself that remedies provided by § 13–406 are for injunction and restitution and are not intended to be punitive. The penalties that were intended are provided in § 13–410 (civil penalty) and § 13–411 (criminal penalty). *See Golt v. Phillips,* 308 Md. 1, 12, 517 A.2d 328 (1986).

The Court therefore holds that the remedy provided in § 13–406(c)(2) is a remedy of restitution encompassing the accepted principles of restitution that require the plaintiffs to tender back what was received, if not consumed or worthless, and if "tender-back" is possible. Plaintiffs have not demonstrated these conditions to obtaining a restitutionary order. On the record before the Court, therefore, the motion for summary judgment will be denied on this request.

Section 13–410 of the Maryland Consumer Protection Act, under which plaintiffs claim civil fines, was amended effective July 1, 1985, to increase the maximum civil fine for each violation from $300 to $1,000. The plaintiffs have shown that four vehicles were titled in Maryland within the one-year limitations period and before July 1, 1985, when the maximum penalty was $300, and nine were titled in Maryland thereafter when the maximum became $1,000.

Dickson correctly notes that the decision whether to impose a fine under § 13–410, and if so, in what amount, lies in the discretion of the Court. *See State v. Action TV Rentals,* 297 Md. 531, 559, 467 A.2d 1000 (1983). Dickson argues that the Court cannot properly exercise this discretion without hearing the facts of the case. However, Dickson offers no support for this argument, and the Court can find no reason why discretion cannot be properly exercised at the summary judgment stage on the basis of this extensive record.

Dickson also argues that plaintiffs may not recover penalties under both federal and state law for the same odometer rollback, citing *Bill Terry's Inc. v. Atlantic Motor Sales,* 409 So.2d 507, 509 (Fla.App. 1982). In *Bill Terry's,* a Florida Appeals Court ruled that an award of both treble damages and punitive damages for the same odometer rollback amounted to an excessive penalty. This policy against duplicative punishment has also appeared in anti-trust cases which have held that an award of treble damages is partially compensatory and partially punitive and therefore duplicative of a punitive damage award. *See, e.g., SuperTurf, Inc. v. Monsanto Co.,* 660 F.2d 1275, 1283 (8th Cir. 1981); *Thomas J. Kline, Inc. v. Lorillard, Inc.,* 674 F.Supp. 183 (D.Md.1987); *Natural Design, Inc. v. Rouse Co.,* 302 Md. 47, 76, 485 A.2d 663 (1984); *McDonald v. Johnson & Johnson,* 722 F.2d 1370, 1381 (8th Cir.1984), *cert. denied* 469 U.S. 870, 105 S.Ct. 219, 83 L.Ed.2d 149 (1984).

The instant case is distinguishable because plaintiffs are requesting a state law *fine,* as opposed to punitive damages for the victims under state common law. Under principles of dual sovereignty, a state in furtherance of its public policy may punish an individual for conduct that also gives rise to punitive remedies for victims under a separate federal statute. *Cf., e.g., Abbate v. United States,* 359 U.S. 187, 79

S.Ct. 666, 3 L.Ed.2d 729 (1959). The Court therefore will permit the Attorney General to recover for consumers the $1,500 for each violation of federal law and at the same time recover civil penalties under state statutory law.

Considering the number of vehicles fraudulently sold by defendants, and the number of years defendants persisted in their scheme, the Court finds the conduct particularly egregious. Therefore, in its discretion, the Court will impose the maximum civil fines allowable. Applying the statute of limitations as discussed above and including only vehicles titled in Maryland, the Attorney General will be awarded a civil fine against Dickson of $10,200 without prejudice to a showing at trial that other transactions are subject of the Maryland Consumer Protection Act.

For the foregoing reasons a separate order will be entered granting in part and denying in part plaintiffs' motion for summary judgment and granting in part and denying in part defendant Dickson's motion for summary judgment.

### ORDER

For the reasons given in the Opinion of this date, it is hereby ordered this 28th day of June, 1989, by the United States District Court for the District of Maryland that:

1. The motion of plaintiffs for summary judgment is granted in part and denied in part.

2. The motion of Dickson for summary judgment is granted in part and denied in part.

3. Partial summary judgment is entered in favor of the Attorney General of Maryland and against defendants Dickson and Locklear on Counts I and II of the complaint in the amount of $532,500, plus costs including reasonable attorneys fees.

4. Under Counts III and IV of the complaint, Dickson is liable to the Attorney General of Maryland for all of those vehicles (of the 355 total) that were titled in Maryland. This liability shall not provide additional amounts due to plaintiff but shall only provide additional grounds of liability against Dickson as to the vehicles titled in Maryland. With respect to all other vehicles, the motion of plaintiffs under Counts III and IV is denied.

5. Under Count V, plaintiffs are entitled to civil fines in the amount of $10,200 with respect to vehicles titled in Maryland on or after April 9, 1985. For the other vehicles titled in states other than Maryland on or after April 9, 1985, the plaintiff's motion for summary judgment is denied. For all vehicles titled before April 9, 1985, plaintiff's motion for summary judgment for civil fines is denied and Dickson's motion for summary judgment on the claim for fines is granted. Fines for these transactions are barred by the applicable statute of limitations.

6. Under Count V, plaintiff's motion for summary judgment to recover restitutionary award is denied.

7. The issues that are reserved for trial, therefore, are:

A. Plaintiffs' claims against Dickson under Counts III and IV with respect to vehicles not titled in Maryland;

B. Plaintiffs' claims against Dickson under Count V for fines with respect to the five vehicles titled after April 9, 1985 in states other than Maryland; and

C. Plaintiffs' claims against Dickson under Count V for restitution.