STATE OF UTAH, by David L. WILKINSON, Attorney General, Plaintiff,

v.

B & H AUTO, a corporation of the State of Utah, Hiram Smith aka Hiram A. Smith, individually and dba B & H Auto and dba Star Auto, Billie L. Smith, individually and dba B & H Auto, Alan J. Kamja, and the Estate of George Anderson aka George L. Anderson, Defendants.

Civ. No. C–87–804W.

United States District Court, D. Utah, C.D.

Dec. 12, 1988.

Ruth Lybbert Renlund, Asst. Atty. Gen., Salt Lake City, Utah, for plaintiff.

Samuel Alba, Robert G. Wing, Don R. Schow, Salt Lake City, Utah, for defendants.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter is before the court on defendants' motions to dismiss and for more definite statement. A hearing was held on this motion on October 17, 1988. Defendants B & H Auto, Billie Smith, and Hiram Smith were represented by Samuel Alba. Plaintiff, State of Utah, was represented by Ruth Lybbert Renlund. Prior to the hearing, the court had reviewed carefully the memoranda submitted by the parties. After taking the matter under advisement, the court has further considered the law and the facts and now renders the following memorandum decision and order.

Defendants moved for dismissal of the State's second amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants also moved for a more definite statement under Rule 12(e). The motion for more definite statement was effectively resolved by Exhibit 2 to the State's opposing memorandum and by the statements of State's counsel during the hearing. The State has identified the plaintiffs in interest as ultimate purchasers of the vehicles allegedly tampered with, not intermediate dealers. Accordingly, as the defendants now have the information they were seeking, the court denies the motion for more definite statement insofar as a formal amendment to the complaint is being requested.

Defendants also moved for a dismissal of the State's second amended complaint under Rule 12(b)(6) on two grounds: first, defendants assert that the State is barred by the statute of limitations; second, defendants assert that the State's Count II (that defendants violated the Motor Vehicle Information Cost Savings Act, 15 U.S.C. § 1981 *et seq.*) and Count V (that defendants violated the Utah Consumer Sales Practices Act, Utah Code Ann. § 13-11-4(2)(b) (1986)) fail to state a claim because the defendants "did not have the type of relationship with the state anticipated by the applicable statutes."[1]

### Statute of Limitations

The Motor Vehicle Information Cost Savings Act, 15 U.S.C. § 1981 *et seq.* prohibits

---

1. Although both parties have referred to the class certification issue in their papers, that issue is addressed under a separate motion that is not before the court at this time.

transferors of automobiles from tampering with vehicle odometers with the intent to defraud purchasers. Enforcement of the Act is through private causes of action by damaged purchasers, 15 U.S.C. § 1989, as well as through actions brought by the Attorney General on their behalf, 15 U.S.C. § 1990a. Both types of actions to enforce liability must be brought "within two years from the date on which the liability arises." 15 U.S.C. § 1989(b); *see also* 15 U.S.C. § 1990a(b).

■ Liability "arises" each time the Act is violated. Case law, however, has tolled the running of the limitations period from the time of the violation until the time the purchaser discovers the fraud or should have discovered it in the exercise of reasonable discretion. *Byrne v. Autohaus on Edens, Inc.,* 488 F.Supp. 276 (D.C.Ill.1980); *see also Jones v. Roy Stanley Chevrolet,* 666 F.Supp. 194 (D.Mont.1987) (purchaser who should have discovered disconnected odometer on day of purchase barred from suing more than two years after purchase); *Tye v. Spitzer–Dodge,* 499 F.Supp. 687 (D.C.Ohio 1980) (limitations period tolled until violations first discovered by plaintiff). Thus, in the case at bar, each of the ninety-four claims brought by the Attorney General is a separate cause of action and each must be separately examined to determine its compliance with the two year statute of limitations. Each claim's timeliness depends on whether the purchaser on whose behalf that claim is brought discovered or should have discovered the appropriate defendants' alleged fraud within two years of the filing of the original complaint on September 15, 1987. The date the State discovered each alleged violation is irrelevant; the State has no greater rights than those upon whose behalf it brings the action.

The record in the case at bar is barren of facts concerning the timing of the discovery of each alleged fraud by each purchaser. Because a statute of limitations argument is an affirmative defense, Fed.R. Civ.P. 8(c), the burden is on the defendants to prove that the limitations period has run. The defendants have not met their burden at this time. If further discovery indicates that some [2] of these claims are untimely, they may be dismissed by motion made at that time.

Defendant Billie Smith has also asked this court to rule that all claims are untimely as to her because she was not made a party to the action until the filing of the second amended complaint on July 15, 1988. This issue is also resolved under the rationale discussed above, except that the crucial date beginning the limitations period insofar as Billie Smith is concerned might be July 15, 1986, rather than September 15, 1985. Although this court must determine the applicable date in order to determine the State's right to maintain each separate claim against Billie Smith, it would be premature to make such a ruling now, in light of the factual void. The entire issue must be left unaddressed until more discovery is conducted.

Accordingly, the motion to dismiss the entire complaint as to all defendants on statute of limitations grounds is DENIED. The motion to dismiss the complaint as to Billie Smith on statute of limitations grounds is also DENIED.

*Failure to State a Claim*

A. Plaintiff's Count II.

■ The defendants have alleged that Count II of the State's second amended complaint fails to state a claim because the ultimate purchasers represented by the State are not "transferees" within the meaning of 15 U.S.C. § 1988. Defendants base this argument on *Williams v. Toyota of Jefferson, Inc.,* 655 F.Supp. 1081 (E.D. La.1987), in which the Louisiana district court determined that the plaintiff must be

---

**2.** It is clear that each purchaser could not have discovered a violation of 15 U.S.C. 1981 *et seq.* prior to his purchase of the vehicle. Therefore, the claims involving vehicles numbered 41, 42, 55, 63, 74, 75, 77, 78, 79, 90, 91, 92, 93, and 94 in Exhibit 2 to plaintiff's memorandum in opposi-

tion to motion to dismiss are all clearly within the statute of limitations, at least as to the defendants named in the original complaint, because they were transferred to their purchasers after September 14, 1985.

in privity with the defendant in order to sue under 15 U.S.C. § 1981 *et seq.*

With all due respect to the Louisiana district court, this court disagrees with the *Williams* decision. Instead, the court adopts the rationale articulated by the fourth circuit court in *Ryan v. Edwards,* 592 F.2d 756 (4th Cir.1979):

> We do not think the concept of privity can be used to bar a plaintiff's recovery under the statute. "The language in § 1989 'any person ... shall be liable' indicates no intent to limit liability to the immediate seller of a motor vehicle, but to extend liability to and impose liability upon any person violating the law." *Stier v. Park Pontiac, Inc.,* 391 F.Supp. 397 (S.D.W.Va.1975). Nor does the statute's language require the plaintiff to prove his reliance on each false statement. *Delay v. Hearn Ford,* 373 F.Supp. 791 (D.S. C.1974). The dispositive finding is the transferor's intent to defraud, and Ryan may recover the statutory damages from each transferor in his chain of title who made false mileage statements with such intent.

592 F.2d at 761–62. *See also Tusa v. Omaha Auto Auction, Inc.,* 712 F.2d 1248, 1251 n. 2 (8th Cir.1983) (privity is unnecessary between defrauded party and party violating 15 U.S.C. § 1981 *et seq.*).

Because the State has alleged both that the defendants violated the Act and that the defendants were transferors in the chains of title to the vehicles, the State has stated a valid claim. Accordingly, defendant's motion to dismiss Count II for failure to state a claim is DENIED.

### B. Plaintiff's Count V.

██ The defendants also assert that Count V of the State's second amended complaint fails to state a claim under the Utah Consumer Sales Practices Act, Utah Code Ann. § 13–11–1 *et seq.* (1986). The State has alleged that the defendants violated Section 13–11–4(2)(b) of that Act, which identifies as deceptive an act or practice of a supplier which "indicates that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not...." Utah Code Ann. § 13–11–4(2)(b). Defendants argue that because they were "not involved in 'consumer' transactions ... the Act has no application to them." *Memorandum in Support* at 10. The defendants assert that they are insulated from liability for their allegedly deceptive acts because they sold the vehicles allegedly involved to independent dealers for resale, rather than directly to consumers.

The court has not located any Utah case law on point.[3] The purpose and language of the Utah Consumer Sales Practices Act, however, lead the court to conclude that the defendants' position is incorrect as a matter of law.

The stated purpose of the Act supports this conclusion. The Act is to be construed liberally "to protect consumers from suppliers who commit deceptive and unconscionable sales practices...." Utah Code Ann. § 13–11–2. The situation in which deceptive Supplier A charges innocent intermediate Supplier B an inflated price and B then passes that inflated price on to Consumer C is easily foreseeable, and one from which the consumer should be protected. To interpret "supplier" narrowly to include only those in privity with the consumer would defeat the clear purpose of the Act, and could not have been intended by the Utah legislature.

---

**3.** In the closest case, *State by Division of Consumer Protection v. GAF Corporation,* 760 P.2d 310 (Utah 1988), the issue of whether the Act requires privity appears to have been raised but circumvented by the court. In that case, the State had lost on summary judgment its suit under the Consumer Sales Practices Act against a manufacturer of defective asphalt shingles. On appeal, the State raised the issue of whether the manufacturer's lack of intent to deceive was fatal to the Division's attempt to state a valid claim for relief under Section 13–11–4(2)(b).

After ruling that no intent to deceive was necessary, the court turned to the privity issue. By finding that the representations contained in the manufacturer's advertising were express warranties, the court found the manufacturer liable to the consumer under Section 13–11–4(2)(b) "*irrespective of whether [the manufacturer] was in privity with [the consumer].*" 760 P.2d at 314. The court did not rule on whether privity was in fact necessary to maintain an action under the Act, the question at issue here.

The language of Section 13–11–3(b) of the Act also supports this conclusion. Section 13–11–3(6) defines "supplier" as follows:

> (6) "Supplier" means a seller, lessor, assignor, offeror, broker, or other person who regularly solicits, engages in, or enforces consumer transactions, *whether or not he deals directly with the consumer.*

Utah Code Ann. § 13–11–3(6) (emphasis added). The last phrase in this definition encompasses the situation with the intermediate innocent supplier referred to above. In such a situation, while the deceptive supplier does not directly deal with the consumer, his actions significantly impact the later consumer transaction. Clearly it is the consumer who is victimized by Supplier A's actions. Because of the clear causal link between Supplier A's deceptive actions and the result to Consumer C, Supplier A can be said to be indirectly "engaging in" the later [4] transaction between Supplier B and Consumer C.

The Utah Consumer Sales Practices Act is broad enough to impose liability upon suppliers of consumer goods who deceptively transact with other suppliers. To hold otherwise would create a loophole which would effectively undermine the Act. Accordingly, the defendants' motion to dismiss Count V of the State's second amended compliant on the ground that it fails to state a claim is DENIED.

This will suffice as the court's order on these motions. No further order need be prepared by counsel.

---

4. Acts of the supplier before, during or after the transaction can subject the supplier to liability.

Utah Code Ann. § 13–11–4(1).