JOHN WATSON CHEVROLET, INC., Plaintiff,

v.

Linda K. WILLIS, Defendant.

Civ. No. 95–NC–33W.

United States District Court, D. Utah, Northern Division.

July 5, 1995.

Clifford J. Payne, Hanson, Nelson, Chipman & Quigley, Salt Lake City, UT, for plaintiff.

Ralph C. Petty, Salt Lake City, UT, for defendant.

## MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

WINDER, Chief Judge.

Defendant Linda K. Willis ("Willis") has filed a motion to dismiss Plaintiff John Watson Chevrolet's ("John Watson") complaint and has attached to her motion a memorandum in support thereof. Plaintiff John Watson has filed a memorandum in opposition to Willis's motion, and Willis has filed a reply memorandum thereto. The court has carefully read and considered all of the foregoing, and has also familiarized itself with the applicable law and the facts as they relate to Willis's motion. Now being fully advised, the court renders the following Memorandum Decision and Order.[1]

### I. BACKGROUND

John Watson's complaint is brought pursuant to the odometer tampering and disclosure sections of both the federal Motor Vehicle Information and Cost Savings Act (the "Federal Act"), codified at 15 U.S.C.A. §§ 1981 to 1991 (West 1982), and the Utah Motor Vehicle Act (the "Utah Act"), codified at Utah Code Ann. §§ 41–1a–901 to 906 (1993).[2] The factual allegations contained in John Watson's complaint, which for purposes of this motion are accepted by the court as true, are as follows.

Plaintiff John Watson is an automobile dealership located in Ogden, Utah. Defendant Willis is a Utah resident who resides in Ogden, Utah. On March 27, 1992, Willis purchased a 1991 Toyota 4–Runner automobile (the "4–Runner") from a Mr. Edwin C. Duarte in Los Angeles, California. Willis paid Mr. Duarte $11,700 in consideration for the 4–Runner. In return, Mr. Duarte gave a California certificate of title to Willis which represented, *inter alia,* that the actual mileage on the 4–Runner at the time of the sale was 1,841 miles and that the Vehicle Identification Number ("VIN") for the 4–Runner was JT3VN39W8M0072185.

Willis returned to Utah soon after purchasing the 4–Runner from Mr. Duarte. She did not obtain a Utah title for the 4–Runner or register the 4–Runner in Utah, however, even though both are requirements of Utah law.[3] Several months later, on May 8, 1992,

---

1. The court, after carefully reviewing all of the materials which have been filed regarding this matter, has determined that oral argument would not materially assist the court in determining the issues raised in Willis's motion.

2. In doing its initial research on Willis's motion to dismiss, the court discovered that the Federal Act was repealed effective July 5, 1994. *See* 15 U.S.C.A. §§ 1981 to 1991 (West Supp.1995). The court also discovered that a similar (if not identical) odometer statute was enacted that very same day in another section of the United States Code. *See* 49 U.S.C.A. §§ 32701 to 32711 (West 1995).

   Because the jurisdictional basis for John Watson's complaint is a statute which was in force when the alleged wrongs in this case accrued but was repealed by the time John Watson filed its complaint on March 9, 1995, the court asked counsel for the parties to brief it on whether the new or the old statute should apply in this case. After considering the arguments contained in the briefing, and in accordance with the apparent agreement of the parties, the court finds that the Federal Act contained at 15 U.S.C.A. §§ 1981 to 1991 is the correct statute to proceed under, and that John Watson therefore does not have to amend its complaint in this case. *See generally* Pub.L. No. 103–272, § 7, 108 Stat. 1379 (effective July 5, 1994) (indicating that the new statute should be applied *"except for the rights and duties that matured ... before the date of enactment of this act"*) (emphasis added).

3. Utah Code Ann. § 41–1a–201 provides that "[u]nless exempted, a person may not operate and an owner may not give another person permission to operate a motor vehicle ... in this state unless it has been registered." Utah Code Ann. § 41–1a–201 (1993). Moreover, Utah Code Ann. § 41–1a–501 provides that "[u]nless exempted, each owner of a motor vehicle ... shall apply to the division for a certificate of title on forms furnished by the division as evidence of ownership." *Id.* § 41–1a–501. Finally, Utah Code Ann. § 41–1a–1303 provides that it is "a class C misdemeanor for a person to drive, or for

Willis sold the 4–Runner to Ms. Jenny Beth Koford of Ogden, Utah for $10,300. Willis did not execute an odometer disclosure statement when she sold the 4–Runner to Ms. Koford. Moreover, Willis also did not tell Ms. Koford that the VIN on the 4–Runner had been altered.

Three days later, on May 11, 1992, Ms. Koford went to the Utah State Division of Motor Vehicles (the "DMV") to get the 4–Runner titled and licensed. Because Ms. Koford did not have an odometer disclosure statement with her when she went to the DMV, the DMV made her execute an odometer disclosure waiver. In the waiver, Ms. Koford attested that Willis had not provided her with a written odometer disclosure when she bought the 4–Runner, and that she had since been unable to contact Willis to obtain the statement. Approximately one month later, on June 18, 1992, the DMV issued a Utah certificate of title on the 4–Runner. The title listed Ms. Koford and her husband as the registered owners of the 4–Runner, and the mileage on the 4–Runner as 3,981 miles.

Roughly ten months later, on April 24, 1993, the Kofords sold the 4–Runner to John Watson for an undisclosed price. They also filled out the odometer disclosure statement on the back of the 4–Runner's title, indicating that the 4–Runner's actual mileage on that date was 25,637 miles.[4] Six weeks later, on June 5, 1993, John Watson sold the 4–Runner to Ms. Bonnie Williams of West Point, Utah for $18,200. Soon thereafter, the Ogden police contacted Ms. Williams and informed her that the 4–Runner was a stolen vehicle from California and that the VIN on the 4–Runner had been altered. The police also seized the 4–Runner, and John Watson was subsequently forced to reimburse Ms. Williams for the full purchase price. This lawsuit followed on March 9, 1995, the gravamen of John Watson's argument being that Willis intended to defraud Ms. Koford and all subsequent purchasers of the 4–Runner when she sold the 4–Runner to Ms. Koford in 1992 without either executing an odometer disclosure statement or telling Ms. Koford that the 4–Runner's VIN had been altered.

## II. STANDARD OF REVIEW

In determining whether to grant a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept all well-plead facts as true. *Arnold v. McClain*, 926 F.2d 963, 965 (10th Cir.1991). In addition, all inferences that can be drawn from the allegations must be drawn in favor of the plaintiff. *Id.* at 965. "[I]f as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailable one." *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989) (citation omitted) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984)).

## III. DISCUSSION

### A. The Federal Act.

Congress, in enacting the Federal Act, intended to punish anyone who failed to disclose to a prospective buyer the actual mileage of a vehicle in order to make the vehicle appear to the buyer to be a better purchase. *See Tye v. Spitzer–Dodge*, 499 F.Supp. 687, 690–91 (S.D.Ohio 1980); *Jones v. Fenton Ford, Inc.*, 427 F.Supp. 1328, 1337–38 (D.Conn.1977). In furtherance of that purpose, section 1988(a) of the Federal Act requires that each seller of a vehicle issue to the buyer a statement disclosing the cumulative mileage registered on the vehicle and, if the odometer reading is known by the seller to be less than the number of miles the

---

an owner knowingly to permit to be driven or moved upon any highway any vehicle of a type required to be registered in this state ... that is not registered or for which a certificate of title has not been issued or applied for." *Id.* § 41–1a–1303.

4. With limited exceptions not relevant here, the transferor of an automobile is required by Utah law to write down the actual mileage of the automobile on the certificate of title when he or she transfers ownership of the automobile to a transferee. *See* Utah Code Ann. § 41–1a–902 (1993).

vehicle has actually traveled, a statement disclosing that the actual mileage is unknown. 15 U.S.C.A. § 1988(a) (West 1982).[5] In addition, section 1988(b) prohibits a seller from making any false statements when giving the disclosures required under the Federal Act. *Id.* § 1988(b).[6] Finally, these provisions are enforced through private causes of action brought by damaged purchasers, as well as through actions brought by the state attorney general on their behalf, under sections 1989(a) and 1990a(a) of the Federal Act. *See id.* § 1989(a); § 1990a(b); *State of Utah v. B & H Auto*, 701 F.Supp. 201, 203 (D.Utah 1988).[7]

█ In this case, John Watson has brought its complaint against Willis pursuant to section 1989(a). Willis argues that the complaint should be dismissed because it is time-barred under the applicable statute of limitations for that section. The statute of limitations for section 1989(a) is set forth in section 1989(b). It provides, in relevant part:

An action to enforce any liability created under subsection (a) of this section, may be brought in a United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, *within two years from the date on which the liability arises.*

15 U.S.C.A. § 1989(b) (West 1982) (emphasis added). The dispositive issue to be decided by the court here is whether the two year limitations period noted above begins to run as to *all potential plaintiffs* as soon as *any potential plaintiff* discovers or constructively discovers that the Federal Act has been violated, or whether the limitations period begins to run as against a potential plaintiff only when *that plaintiff* (and not a prior owner) discovers or constructively discovers a violation.[8] The issue is dispositive because in this case Ms. Koford bought the 4-Runner from Willis on May 8, 1992, and knew at that time that Willis had not executed an odometer disclosure statement as required by the Federal Act. Thus, if the statute of limitations began running against John Watson on that date, John Watson's complaint is time-barred because it did not commence this case until March 9, 1995—or almost three years

---

**5.** Section 1988(a) provides:

Not later than 90 days after October 20, 1972, the Secretary shall prescribe rules requiring any transferor to give the following written disclosure to the transferee in connection with the transfer of ownership of a motor vehicle:
(1) Disclosure of the cumulative mileage registered on the odometer.
(2) Disclosure that the actual mileage is unknown, if the odometer reading is known to the transferor to be different from the number of miles the vehicle has actually traveled.
Such rules shall prescribe the manner in which information shall be disclosed under this section and in which such information shall be maintained.
15 U.S.C.A. § 1988(a) (West 1982). Pursuant to this statutory mandate, the Secretary of Transportation has promulgated odometer disclosure rules which can be found at 49 C.F.R. §§ 580.1 to 580.16 (1994).

**6.** Section 1988(b) provides that "[n]o transferor shall violate any rule prescribed under this section or give a false statement to a transferee in making any disclosure required by such rule." 15 U.S.C.A. § 1988(b) (West 1988).

**7.** Section 1989(a) provides:

Any person who, with an intent to defraud, violates any requirement imposed under this subchapter shall be liable in an amount equal to the sum of—

(1) three times the amount of actual damages sustained or $1,500, whichever is the greater; and
(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with reasonable attorney fees as determined by the court.
15 U.S.C.A. § 1989(a) (West 1988).
Section 1990a(a) provides:
If any person violates any requirement imposed under this subchapter, the chief law enforcement officer of the State in which such violation occurred may bring an action to—
(1) restrain such violation; or
(2) recover amounts for which such person is liable under section 1989 of this title to each person on whose behalf such action is brought.
*Id.* § 1990a(a).
Liability cannot be imposed under either of these sections unless there is both a violation of the disclosure requirements of the Federal Act, coupled with a finding of an intent to defraud. *See Tye*, 499 F.Supp. at 690 (citation omitted); *Clayton v. McCary*, 426 F.Supp. 248, 258 (N.D.Ohio 1976).

**8.** Put another way, the issue is whether the Federal Act's statute of limitations begins to run as to all potential plaintiffs as soon as any plaintiff discovers or constructively discovers a violation, or whether the statute of limitations begins anew every time that the subject vehicle is conveyed.

after Ms. Koford was allegedly defrauded by Willis.

The court has been able to find only two cases that have ever come close to addressing this issue—and both reach diametrically opposed conclusions. The first is *Byrne v. Autohaus on Edens, Inc.*, 488 F.Supp. 276 (N.D.Ill.1980), relied upon by Willis in arguing for dismissal. In *Byrne*, the defendant car dealership sold the car at issue to a Mr. Hile in February of 1973 without furnishing Mr. Hile an odometer statement as required under the Federal Act. *Id.* at 279. The defendant soon thereafter reacquired the car and sold it to a Ms. Maurer in October of 1973, again without the required odometer statement. *Id.* Almost three years later, in June of 1976, Ms. Maurer sold the car to a Mr. Shabica, and Mr. Shabica in turn sold the car to the plaintiff in May of 1978. *Id.* The plaintiff then sued the defendant for odometer fraud on March 2, 1979, and the defendant filed a motion to dismiss the plaintiff's complaint as barred by section 1989(b)'s two-year statute of limitations. *Id.* In granting the defendant's motion, the court first framed the issue that it was required to address. The court wrote:

> [T]he precise question presented herein ... is whether discovery or constructive discovery of a particular violation of the [Federal] Act by any owner of the motor vehicle causes the statute of limitation to run as against all subsequent owners, or whether the statute only begins to run as against a particular owner upon his discovery or constructive discovery.

*Id.* at 280. The court then decided that because Mr. Hile and Ms. Maurer both knew that they were not provided with an odometer disclosure statement when they bought the car from the defendant in 1973, the plaintiff's case was barred. In so holding, the court wrote:

> A violation of the [Federal] Act creates a single cause of action, not as many causes of action as there might be subsequent owners.... A violation of the Act, there-

fore, becomes actionable when any potential plaintiff has a right of action, i.e., upon that person's discovery or constructive discovery of the violation. Therefore, it is the Court's view that the Act's statute of limitation begins to run as to a violation of the Act as against all potential plaintiffs at the time any person having standing to sue discovers or constructively discovers the violation, absent some act of fraudulent concealment. Accordingly, knowledge possessed by an owner of a motor vehicle as to a previous owner's possible violation of the Act should be imputed to all subsequent owners, much in the same manner that contract law provides that assignees possess only those rights possessed by the assignor.

*Id.* at 280–81.

The second case to address the issue is *Attorney General v. Dickson*, 717 F.Supp. 1090 (D.Md.1989), *appeal dismissed*, 914 F.2d 247 (4th Cir.1990). *Dickson* was an enforcement action brought by the Maryland Attorney General under 15 U.S.C.A. § 1990a. The complaint was filed on April 9, 1986, and alleged that the defendant had violated the Federal Act by rolling back the odometers of some 355 used automobiles prior to their sale in the years 1981 through 1985. *Id.* at 1093, 1102. Soon thereafter, the defendant filed a motion asking the court to dismiss all of the counts against him which were based on roll backs that had occurred prior to April 9, 1984, because those roll backs occurred more than two years prior to the date that the complaint was filed. *Id.* at 1102.[9] In addressing the defendant's motion, the court first framed the arguments of the respective parties. The court wrote:

> Although many vehicles were sold before April 9, 1984 (i.e., over two years before the complaint was filed), *plaintiffs assert that they did not discover the alleged violations until September 1985 and argue that the running of the two-year limitation period was tolled until that time....* Dickson argues that many of the alleged violations were discovered earlier than

---

9. The statute of limitations for actions brought under section 1990a is substantively the same as the statute of limitations at issue in this case. The statute provides: "Any action under subsec-

tion (a) of this section may be brought *within two years from the date on which the liability arises.*" 15 U.S.C.A. § 1990a(b) (West 1982) (emphasis added).

July 1985. In support of this argument, Dickson has filed a copy of the deposition of Eugene D. Frantz, an investigator with the Maryland State Motor Vehicle Administration, a division of the Maryland Department of Transportation. Frantz testified that he began an investigation of Douglas Dickson when he received a report from Trooper Samuel Summers of the Motor and Safety Enforcement Division of the Maryland State Police suggesting Dickson's involvement in odometer tampering. By November, 1983, Frantz had identified approximately 25 vehicles sold by Douglas Dickson which had had their odometers rolled back and had submitted a statement of charges against Douglas Dickson with the state's attorney's office in Frederick County. *Dickson argues that the knowledge of the state trooper, the Motor Vehicle Administration investigator, and the state's attorney's office in Frederick County should be imputed to the Attorney General.*

*Id.* (emphasis added). The court then rejected the defendant's "imputed knowledge" argument as inconsistent with the policies behind the Federal Act. The court wrote:

Section 1990a(b) of the federal odometer Act states that an action under 1990a (authorizing suits by state attorneys general) "may be brought within two years from the date on which the liability arises...." This two-year period, however, is subject to the discovery rule governing federal causes of action, which provides that statutes of limitation applicable to actions sounding in fraud begin to run either from the date the fraud is discovered or from the date that it could have been discovered in the exercise of reasonable diligence.... [Here,] *none of those who knew of the alleged odometer rollbacks were acting as agents of the Attorney General's office.* The Attorney General is the one charged with enforcement of both the federal odometer Act and the Maryland Consumer Protection Act.... [Therefore,] *because*

*the Attorney General is first charged with knowledge of the violations in the summer of 1985, this action, which was brought in April of 1986, is not time-bared under the federal odometer Act.*

*Id.* at 1102–03 (citations omitted).

With all due respect to the court in *Byrne,* the court finds that the reasoning in the *Dickson* case is the more persuasive, and that *Dickson* and not *Byrne* should be followed in addressing statute of limitations issues arising under 15 U.S.C.A. § 1989(b).[10] First, the *Byrne* decision is based on a faulty legal premise. For example, the genesis for the *Byrne* court's "imputed knowledge" holding is the assumption that the Federal Act only creates a "single cause of action, not as many causes of action as there might be subsequent owners." *Byrne,* 488 F.Supp. at 280. Yet this court in *B & H Auto* held that liability "arises" under the Federal Act "each time the Act is violated," and that each defrauded purchaser therefore has a "separate cause of action" that "must be separately examined to determine its compliance with the two year statute of limitations." *B & H Auto,* 701 F.Supp. at 203. The court held this way in *B & H Auto* because every court that has addressed the issue, including *Byrne,* has concluded that in as much as the Federal Act is founded upon fraudulent conduct, the federal courts are bound to employ the federal "discovery rule" when applying the Federal Act's statute of limitations. *See id.* (citing *Byrne,* 488 F.Supp. at 280; *Tye,* 499 F.Supp. at 693); *see also Dickson,* 717 F.Supp. at 1102 (holding that the two-year period in section 1990a "is subject to the discovery rule governing federal causes of action") (citation omitted); *Jones v. Roy Stanley Chevrolet,* 666 F.Supp. 194, 195 (D.Mont.1987) ("[T]he court finds that the Act's statute of limitations begins to run from the date of either the discovery or constructive discovery of the violation.") (citations omitted); *Bill Terry's Inc. v. Atlantic Motor Sales, Inc.,* 409 So.2d 507, 509 (Fla.Ct.App. 1982) ("The statute of limitations in 15 U.S.C.

---

**10.** As noted above, *Dickson* was an enforcement action brought under 15 U.S.C.A. § 1990a while *Byrne,* like this case, was brought under 15 U.S.C.A. § 1989. That is a distinction without a difference, however, because the statute of limi-

tations for those two sections of the Federal Act are substantively the same. *See supra* note 9. Therefore, the reasoning in *Dickson* is applicable in this case.

§ 1989 begins to run upon discovery of the violation."). If the court were to now read into section 1989(b) an "imputed knowledge" standard as Willis has requested and as the *Byrne* court did, those holdings, and the logic upon which they are based, would be meaningless. This the court will not do.[11]

Second, the *Byrne* decision is based on faulty notions of public policy. For example, the *Byrne* court wrote:

> To interpret the statute of limitations so that it begins to run only upon the plaintiff's discovery or constructive discovery of a violation, without regard to any knowledge of that violation possessed by prior owners and potential plaintiffs, would effectively undermine the policy considerations inherent in Congress's enactment of a statute of limitation. Such an interpretation could subject a violator of the Act to potential liability throughout the life of a vehicle. . . . The Court refuses to find that Congress intended such an inequitable result.

*Byrne*, 488 F.Supp. at 281. With all due respect, the focus should be on the specific policy considerations behind Congress's enactment of the Federal Act, and not on the general policy considerations inherent in all statutes of limitations. Congress enacted the Federal Act "to punish odometer tamperers by imposing civil penalties upon them and to reward purchasers who discover such tampering and bring it to the attention of the federal courts." *Delay v. Hearn Ford*, 373 F.Supp. 791, 796 (D.S.C.1974). This policy would not be furthered by an interpretation of section 1989(b) which imputes the knowledge of one prior purchaser to all later purchasers to bar a later purchaser's recovery. The court therefore refuses to read such a limitation into the statute.

Accordingly, for both of the aforementioned reasons, the court holds that the statute of limitations contained in 15 U.S.C.A. § 1989(b) begins to run as against a potential plaintiff, only when *that plaintiff*, and not any other purchaser of the automobile,

knows or reasonably should know that a violation of the Federal Act has occurred. Applying that principle to the case at bar, the court finds that John Watson purchased the 4–Runner from Ms. Koford on April 24, 1993, and filed its complaint against Willis on March 9, 1995. Because the earliest date that John Watson reasonably could have discovered Willis's alleged violation of the Federal Act is the date that it purchased the 4–Runner from Ms. Koford, *see B & H Auto*, 701 F.Supp. at 203 n. 2, John Watson's complaint cannot be time-barred as a matter of law.

### B. The Utah Act.

Willis next asks the court to dismiss John Watson's complaint to the extent that John Watson seeks to recover from her under the Utah Act, because that statute does not provide for a private right of action. It is really unnecessary to decide this issue because if John Watson prevails against Watson under the Federal Act, John Watson's recovery will be at least as great as any recovery it could possibly get under the Utah Act, even if a private right of action does exist. *See* 15 U.S.C.A. § 1989(a) (West 1982) (stating that a person who prevails under the Federal Act shall recover "three times the amount of actual damages sustained or $1,500, whichever is the greater," as well as "the costs of the action together with reasonable attorney fees as determined by the court"). Nonetheless, the court will briefly address this issue for the benefit of the parties and the bar.

The odometer provisions of the Utah Act are codified at Utah Code Ann. §§ 41–1a–901 to 906 (Utah 1993). Nowhere in the Utah Act does it mention that a private party may sue to enforce those provisions. Indeed, the sole penalty for violating the odometer provisions of the Utah Act appears to be criminal in nature—a third degree felony. *See* 41–1a–1319 (Utah 1993). Accordingly, although it might be a wise policy for this court to hold that the Utah Act provides defrauded purchasers with a private right of action in as

---

11. The *Byrne* court also wrongly assumed that a statute of limitations is the same thing as a statute of repose. *See Byrne*, 488 F.Supp. at 281 ("Statutes of limitation are statutes of repose.")

(citation omitted). As the Utah Supreme Court recognized in *Raithaus v. Saab–Scandia of America, Inc.*, 784 P.2d 1158 (Utah 1989), however, such an assumption is incorrect:

much as such a holding would likely enhance the effective enforcement of the statute, the court can find no basis under the Utah Act for doing so. *See Parker v. DeKalb Chrysler Plymouth,* 459 F.Supp. 184, 186 (N.D.Ga. 1978), *aff'd,* 673 F.2d 1178 (11th Cir.1982) (recognizing that the Federal Act "clearly contemplates actions by private attorneys-general as a substantial enforcement tool").

### IV. ORDER

Accordingly, based on the foregoing and good cause appearing, IT IS HEREBY OR-DERED that:

1. Willis's motion to dismiss is denied with respect to the issue of whether John Watson's complaint is time-barred under the Motor Vehicle Information and Cost Savings Act.

2. Willis's motion to dismiss is granted with respect to the issue of whether John Watson may recover from Willis under the Utah Motor Vehicle Act.

3. John Watson's complaint is dismissed to the extent that it seeks recovery from Willis under the Utah Motor Vehicle Act.

> "Statutes of repose ... are different from statutes of limitations, although to some extent they serve the same ends." A statute of limitations requires a law suit to be filed within a specified period of time after a legal right has been violated.... On the other hand, statutes of repose are designed to bar actions after a specified period of time has run from the occurrence of some event other than the injury which gave rise to the claim. Since a statute of repose begins to run from a date unrelated to the injury (for example the date of purchase), it is not designed, as are statutes of limitations, to necessarily allow a "reasonable time" in which to file a lawsuit. A statute of repose might theoretically cut off a claim filed within the period allowed by the relevant statute of limitations.

*Id.* at 1158 (quoting *Berry ex rel. Berry v. Beech Aircraft,* 717 P.2d 670, 672 (Utah 1985) (citations omitted)).

If *Byrne*'s "imputed knowledge" test were applied to cases brought under the Federal Act, the two-year period specified in section 1989(b) would begin to run as soon as any purchaser of an automobile is defrauded—even if that purchaser is not the one bringing the lawsuit. Therefore, if this court were to apply the *Byrne* rule, it would really be saying that section 1989(b) contains a two-year "statute of repose" and not a two-year "statute of limitations." This, of course, would be a ludicrous reading of the statute.