Pablo **CARRASCO** and Paula **Carrasco, Plaintiffs,**

v.

**FIORE ENTERPRISES d/b/a 27th Avenue Motors, et al., Defendants.**

**No. CIV–97–216–PHX–ROS.**

United States District Court, D. Arizona.

Sept. 3, 1997.

Floyd W. Bybee, Michael Carey Shaw, Law Offices of Bybee & Shaw, Tempe, AZ, for Pablo Carrasco and Paula Carrasco.

Robert J. Cruse, Cruse Firetag & Bock, Phoenix, AZ, for Fiore Enterprises, Inc.

Brian E. Ditsch, Linzer & Ditsch, Phoenix, AZ, for Gen Part Inc.

H. Rudy C. Stadelman, Cottonwood, AZ, for Billy G. Ash.

David L. Stoll, Byrne Beaugureau Shaw Zukowski & Hancock, Phoenix, AZ, Steven Plitt, Brian Edward Cieniawski, Phoenix, AZ, Jon Christopher Larson, Teilborg Sanders & Parks PC, Phoenix, AZ, for Cropper's-Nogales Auto Center.

Steven Ray Beeghley, Holloway Odegard & Sweeney, Phoenix, AZ, for Albert Short.

Rodolfo Parga, Ryley Carlock & Applewhite PA, Phoenix, AZ, Robert Martin Moore, Broening Oberg Woods Wilson & Cass, Phoenix, AZ for Sports Cars of Scottsdale, Inc.

James J. D'Antonio, Law Offices of James J. D'Antonio PC, Tucson, AZ for GMG Associates Inc. and Corporate Auto and Marine, Inc.

## ORDER

SILVER, District Judge.

Pending before the Court is Defendant Gen Part, Inc. d/b/a Al Taylor Auto Sales' ("Al Taylor") Motion for Judgment on the

Pleadings or, alternatively, Motion to Dismiss for Failure to State a Claim.[1]

## FACTUAL BACKGROUND

On March 3, 1994, Plaintiffs purchased a 1990 Ford F–150 pick-up truck ("Ford pick-up") from Casa Nissan, Inc. of El Paso, Texas ("Casa Nissan"). Casa Nissan gave Plaintiffs an odometer disclosure statement which certified that (1) the odometer reading was 43,034 miles, (2) the reading reflected the true actual mileage of the Ford to the best of Casa Nissan's knowledge, (3) the odometer was not altered, set back or disconnected while in its possession, and (4) it had no knowledge of anyone else altering, setting back or disconnecting the odometer. (Compl.¶ 23.) Plaintiffs allege that subsequent to this purchase, and "within two years of the date of the filing of this complaint," they discovered that "the Ford they had purchased was not as it had been represented to them." (Compl.¶ 24.)

Prior to Casa Nissan's acquisition of the Ford pick-up, it was the subject of a number of sales transactions. Plaintiffs allege that the original owner of the Ford pick-up was Bridgestone/Firestone, which sold the Ford pick-up to H.M. Dodd Motor Company with 348,999 actual miles. (Compl.¶¶ 12, 13.) At the time of that transfer, Firestone's sales agent left blank the odometer statement on the Title Assignment. (Compl.¶ 13.)

On March 8, 1993, Dayton Federal Motors sold the Ford pick-up to Defendant Fiore Enterprises ("27th Avenue Motors"). At the time of that sale, the odometer statement and the odometer showed an actual mileage of 41,403. (Compl.¶ 14.) On April 4, 1993, Defendant 27th Avenue Motors sold the Ford pick-up to Defendant Gen Part ("Al Taylor"). Defendant 27th Avenue Motors provided Defendant Al Taylor with an odometer disclosure statement which stated that the odometer reading was 41,405 miles, that the reading reflected the actual mileage of the Ford, and that the odometer was not altered, set back or disconnected, either while in its possession or, in its knowledge, while in the possession of anyone else. Plaintiffs allege that 27th Avenue Motors knew or should have known that the certifications were false. (Compl.¶ 15.)

On April 7, 1993, Defendant Al Taylor sold the Ford pick-up to Defendant Billy Ash ("Ash Motors"). The odometer statement showed the odometer reading to be 41,482 miles and certified the same representations that 27th Avenue Motors certified to Al Taylor. Plaintiffs allege that Ash Motors knew or should have known that the certifications were false. (Compl.¶ 16.)

Also on April 7, 1993, Defendant Ash Motors sold the Ford pick-up to Defendant Cropper's–Nogales Auto Center ("Cropper's–Nogales"), certifying an odometer disclosure statement identical to the one prepared by Al Taylor. Plaintiffs allege that Ash Motors knew or should have known that the certifications were false. (Compl.¶ 17.)

On November 13, 1993, Defendant Cropper's–Nogales sold the Ford pick-up to Defendant Albert Short ("Davis Auto Sales"), certifying a disclosure statement which stated that the actual mileage on the Ford pick-up was 41,680 miles and including the same representations certified by Ash Motors. Plaintiffs allege that Cropper's–Nogales knew or should have known that the certifications were false. (Compl.¶ 18.)

Also on November 13, 1993, Defendant Davis Auto Sales sold the Ford pick-up to Defendant Sports Cars of Scottsdale ("Sports Cars"), certifying an odometer disclosure statement identical to the one prepared by Cropper's–Nogales. Plaintiffs allege that Davis Auto Sales knew or should have known that the certifications were false. (Compl.¶ 19.)

On December 9, 1993, Defendant Sports Cars sold the Ford pick-up to Defendant G.M.G. ("Fairway Auto Sales"), accompanied by an odometer disclosure statement certifying that the odometer reading was 43,230

---

1. Defendants Albert Short d/b/a Davis Auto Sales, G.M.G. Associates d/b/a Fairway Auto Sales, Corporate Auto and Marine, Inc., Fiore Enterprises d/b/a 27th Avenue Motors, Sports Cars of Scottsdale, Inc., Cropper's–Nogales Auto Center, Inc., and Billy Ash d/b/a Ash Motors have joined in Defendant Gen Part d/b/a Al Taylor's Motion for Judgment on the Pleadings, or alternatively, Motion to Dismiss for failure to state a claim.

miles, and including the same representations. Plaintiffs allege that Sports Cars knew or should have known that the certifications were false. (Compl.¶ 20.)

On February 1, 1994, Defendant Fairway Auto Sales sold the Ford pick-up to Defendant Corporate Auto and Marine, accompanied by an odometer disclosure statement certifying that the odometer reading was 43,-235 miles, and including the same representations. Plaintiffs allege that Fairway Auto Sales knew or should have known that the certifications were false. (Compl.¶ 21.)

Finally, on February 2, 1994, Defendant Corporate Auto and Marine sold the Ford pick-up to Casa Nissan, accompanied by an odometer disclosure statement certifying that the odometer reading was 43,272 miles, and including the same representations. Plaintiffs allege that Corporate Auto and Marine knew or should have known that the certifications were false. (Compl.¶ 22.)

Plaintiffs allege that they discovered the fact that the actual mileage on the Ford pick-up was significantly greater than the mileage reflected on the odometer or in the odometer disclosure statements sometime within two years prior to the filing of their complaint in this action. Plaintiffs filed their complaint on January 31, 1997, naming as Defendants each of the prior owners of the Ford pick-up who allegedly knew or should have known that the odometer reading was false when making the certification that it was true, beginning with Defendant 27th Avenue Motors. Plaintiffs did not name Casa Nissan, the owner who transferred the car to them, as a defendant.[2] Plaintiffs allege that Defendants violated subchapter IV of the Motor Vehicle Information and Cost Saving Act, 15 U.S.C. § 1981 et seq.[3] Plaintiffs also allege state law claims for fraudulent misrepresentation, violation of the State Consumer Fraud Act, A.R.S. 44–1521 et seq., and violation of the State Odometer Act, A.R.S. 44–1223.

2. Plaintiffs have not alleged facts to show how Dayton Federal Motors, which sold the Ford pick-up to Defendant 27th Avenue Motors, acquired the vehicle.

3. Plaintiffs also allege that this Court has jurisdiction to entertain this action under 15 U.S.C.

## LEGAL DISCUSSION

### A. MOTION FOR JUDGMENT ON THE PLEADINGS

■ Judgment on the pleadings may be granted pursuant to Fed.R.Civ.P. 12(c) when "the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Yanez v. United States,* 63 F.3d 870, 872 (9th Cir.1995). In considering a motion for judgment on the pleadings, the "allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner and Company,* 896 F.2d 1542, 1550 (9th Cir.1989).

■ Federal courts generally hesitate to grant judgment on the pleadings, because "hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his claim or defense." 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* Civil 2d § 1368 (1990).

### B. STATUTE OF LIMITATIONS

The Federal Odometer Act was enacted as part of the Motor Vehicle Information and Cost Saving Act, 15 U.S.C. § 1901 et seq. *See* 15 U.S.C. §§ 1981–1991 (repealed effective July 4, 1994) ("Federal Odometer Act"). Title 15 U.S.C. § 1989 created a civil cause of action to enforce liability under the Act. Section 1989(b) also provided that "[a]n action to enforce any liability under subsection (a) of this chapter may be brought in a United States district court ... within two years from the date on which the liability arises." Effective July 4, 1994, sections 1981–1991 were repealed and replaced by 49 U.S.C. §§ 32701–32711. Title 15 U.S.C. § 1989 was

§ 1989(b). Title 15 U.S.C. §§ 1981–1989 were repealed effective July 4, 1994 and replaced by 49 U.S.C. §§ 32701–32711. Accordingly, this Court has jurisdiction over Plaintiffs' claims under 49 U.S.C. § 32710.

replaced by 49 U.S.C. § 32710. Section 32710(b) now provides that "[a] person may bring a civil action to enforce a claim under this section ... not later than 2 years after the claim accrues." The revision notes explicitly state that the substitution of the phrase "after the claim accrues" for "from the date on which the liability arises" was intended only to eliminate unnecessary words. *See* 49 U.S.C.A. § 32710, Historical and Statutory Notes, at 615 (West 1997).[4]

Defendants have moved to dismiss Plaintiffs' claims as time-barred under the two-year statute of limitations. Plaintiffs purchased the Ford pick-up from Casa Nissan on March 3, 1994, more than two years prior to the commencement of this action. However, Plaintiffs allege that they did not discover the fact that the odometer reading was false until a time within two years prior to the filing of their complaint in this action. (Compl.¶ 24.)

Defendants rely on *Byrne v. Autohaus on Edens, Inc.*, 488 F.Supp. 276 (N.D.Ill.1980), for the proposition that the cause of action is time-barred by the applicable statute of limitations because it accrued on the date when the alleged violation was actually or constructively discovered by any person having standing to sue for that violation. In *Byrne*, the district court held that a claim brought under section 1989 for a violation of the Motor Vehicle Information and Cost Savings Act accrues "at the time any person having standing to sue discovers or constructively discovers the violation, absent some act of fraudulent concealment." *Id.* at 280. Under the *Byrne* rule, any cause of action based on Al Taylor's violation of the statute would

have accrued on the date when the owner, Ash Motors, to whom Al Taylor sold the Ford pick-up, discovered or constructively discovered the violation.

Because Plaintiffs allege that Al Taylor sold the vehicle to Ash Motors on April 7, 1993, and that Ash Motors, on the same day, sold the vehicle to Cropper's–Nogales Auto Center, with knowledge or constructive knowledge that the odometer reading was false, the cause of action to enforce Al Taylor's liability under the statute would have accrued on April 7, 1993, when Ash Motors learned or constructively learned of the false representation.[5] Thus, if the cause of action accrued on April 7, 1993, it was time-barred after April 7, 1995, long before Plaintiffs filed their complaint on January 31, 1997.[6]

However, the *Byrne* decision is not controlling authority in this district or circuit. Hence, this Court must independently analyze the statute to determine when the cause of action accrued for Plaintiffs' claim against each Defendant prior owner in the vehicle's chain of title. The narrow issue before the Court is whether the statute of limitations begins to run against all potential plaintiffs as soon as any plaintiff discovers or constructively discovers a violation *or* whether the statute of limitations begins to run against each plaintiff when *that* plaintiff discovers or constructively discovers a violation.

### 1. Applicable law

Because actions under the Federal Odometer Act involve allegations of fraudulent conduct, federal courts employ the federal "discovery rule." *See Jones v. Roy Stan-*

4. The acts which gave rise to Plaintiffs' claims occurred prior to the effective date of the Federal Odometer Act revisions. Plaintiffs' complaint was filed after the effective date of the revisions, and Plaintiffs' claims must have accrued after the effective date of the revisions if the claims are to survive Defendants' argument that the claims are time-barred. However, it is irrelevant for purposes of the pending motions which version of the Act controls Plaintiffs' cause of action. The statute of limitations provision was not substantively changed by the revisions.

5. The same analysis would apply to each defendant joining in Gen Part d/b/a Al Taylor's motions, and if the claim against Al Taylor is time-

barred, then so must the claims against each of the remaining defendants.

6. Plaintiffs have attempted to distinguish *Byrne* on the ground that none of the named defendants had standing to sue because the allegations could be construed to state that each defendant only discovered the fraud as it was signing the disclosure statements and thus their discovery or constructive discovery of the violation could not have started the clock running on the statute of limitations under the *Byrne* rule. It is unnecessary, to address this construction of *Byrne* because the Court finds that *Byrne* is not controlling or persuasive.

*ley Chevrolet,* 666 F.Supp. 194, 195 (D.Mont. 1987); *Davis v. Adoption Auto, Inc.,* 731 F.Supp. 1475, 1477 (D.Kan.1990); *Levine v. MacNeil,* 428 F.Supp. 675, 676 (D.Mass. 1977). The federal discovery rule provides that a cause of action sounding in fraud accrues either on the date a plaintiff discovers the fraud or on the date that plaintiff could have, in the exercise of reasonable diligence, discovered the fraud. *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946). The party seeking the benefit of the discovery rule bears the burden of proving that the circumstances warrant its application. *Attorney General of Maryland v. Dickson,* 717 F.Supp. 1090, 1102 (D.Md.1989), *appeal dismissed,* 914 F.2d 247 (4th Cir.1990).

Federal courts relying on the federal "discovery rule" have cited *Byrne* as authority in support of the conclusion that this rule should be applied to civil actions arising under the Federal Odometer Act. *Davis,* 731 F.Supp. at 1477; *Jones,* 666 F.Supp. at 195; *State of Utah by Wilkinson v. B & H Auto,* 701 F.Supp. 201, 202 (D.Utah 1988). However, those courts have relied on the basic formulation of the discovery rule set forth in *Levine,* 428 F.Supp. at 676 (cited by *Byrne,* 488 F.Supp. at 280), which provides that a cause of action begins to run when the plaintiff discovers or, in the exercise of reasonable diligence should have discovered, the violation. No other court has followed the *Byrne* ruling that once a plaintiff discovers or constructively discovers the violation, the statute of limitations begins to run against that plaintiff as well as all other potential plaintiffs who thereafter purchase the vehicle. For example, in *Jones,* the court cited the *Byrne* court's formulation of the discovery rule as follows:

> The act makes actionable only violations thereof which were committed with intent to defraud. Therefore, since actions under the Act are founded upon fraudulent conduct, federal courts are bound to employ the federal "discovery rule" when applying the statute of limitations set forth in the Act. [*Holmberg,* 327 U.S. at 397, 66 S.Ct. at 585] ... The federal discovery rule provides that statutes of limitation applicable to actions sounding in fraud begin to run either from the date *a plaintiff* discovers the fraud or from the date *that plaintiff* could have in the exercise of reasonable diligence discovered the fraud. Therefore, the Court finds that the Act's statute of limitation begins to run from the date of either the discovery or constructive discovery of the violation.

*Jones,* 666 F.Supp. at 195 (quoting *Byrne,* 488 F.Supp. 276) (emphasis added). Thus, these cases following *Byrne* provide support only for the general application of the federal discovery rule to claims brought under the Federal Odometer Act. The parties do not dispute that the federal "discovery rule" applies to Plaintiffs' cause of action. The critical issue in dispute is how to apply the discovery rule when a plaintiff, as an ultimate owner, seeks to bring an action against all prior owners whose alleged violation occurred more than two years before commencement of the action.

The only other case the Court has found which squarely addresses this issue is *John Watson Chevrolet, Inc. v. Willis,* 890 F.Supp. 1004 (D.Utah 1995). The *John Watson* court explicitly and convincingly rejected the *Byrne* court's reasoning.

## 2. The *Byrne* court's view

The *Byrne* court was confronted with the following facts. The defendant acquired the vehicle in December 1972. At that time, the vehicle's odometer registered 80,000 miles. In February 1973, the defendant sold the vehicle to Mr. Hile. The defendant did not furnish Hile with an odometer disclosure statement, and the odometer registered 30,000 miles. Hile subsequently discovered the vehicle's actual mileage and brought a complaint against the defendant before the Consumer Protection Division of the Illinois Attorney General. The dispute was settled when, in August 1973, the defendant repurchased the vehicle. When the defendant repurchased the vehicle, Hile signed a disclosure statement which indicated that the odometer read 40,493 miles but that the actual mileage was unknown.

In October 1973, the defendant then sold the vehicle to Ms. Maurer and provided her

with the same disclosure statement that Hile had provided to it. In June 1976, Maurer transferred the vehicle to Mr. Shabica. Shabica transferred the vehicle to the plaintiff in May 1978. Neither the Maurer–Shabica nor Shabica-plaintiff transfer was accompanied by an odometer disclosure statement. On March 2, 1979, the plaintiff commenced an action pursuant to 15 U.S.C. § 1989 alleging that the defendant was liable for turning back the odometer in February 1973. The plaintiff alleged that the defendant violated the Act when it sold the vehicle to Maurer in October 1973 because it provided her with Hile's disclosure statement, which indicated the mileage was unknown, when in fact it knew the actual mileage.

The defendant moved to dismiss the complaint as time-barred, but the plaintiff argued that the cause of action did not accrue until he discovered sufficient facts to put him on notice of the defendant's alleged violation of the Act. *Byrne*, 488 F.Supp. at 280. The court found that Maurer had constructively discovered facts sufficient to put her on notice of the defendant's alleged violation in October 1973. *Id.* The court concluded that this discovery started the statute of limitations running against the plaintiff's cause of action against the defendant for acts occurring in October of 1973, and that the cause of action was time-barred after October of 1975, two years from when Maurer constructively discovered the violation and three years before the plaintiff purchased the vehicle. *Id.* at 282.

The court based its ruling on two theories: (1) that only a single cause of action arose for any violation of the Act, not many causes of action by each subsequent owner, *id.* at 280; and (2) knowledge possessed by a prior owner of a motor vehicle was imputed to all subsequent owners. *Id.* at 281. Thus, the *Byrne* court created a rule that the statute of limitations begins to run against all subsequent owners of a vehicle, or potential plaintiffs, as soon as any one owner discovers or constructively discovers, a violation. The court concluded that the purpose of the Act would be undermined if the plaintiff's action was found not to be time-barred because "such an interpretation could subject a viola-

tion of the Act to potential liability throughout the life of a vehicle," *id.* at 281, even though this result might preclude the plaintiff from any recovery. *Id.* at 282–83.

### 3. The *John Watson* court's view

In *John Watson*, the court was confronted with the following facts. The defendant, a Utah resident, purchased a vehicle on March 27, 1992, from Mr. Duarte, who provided the defendant with a California certificate of title, which represented that the actual mileage on the vehicle at the time of sale was 1,841. The defendant did not obtain a Utah certificate of title or register the car in Utah. On May 8, 1992, the defendant then sold the vehicle to Ms. Koford. The defendant did not execute an odometer disclosure statement and did not inform Koford that the VIN number had been altered. On May 11, 1992, Koford registered the vehicle in Utah, executing a disclosure statement which represented that the true mileage was unknown but that the odometer read 3,981 miles. On April 24, 1993, Koford sold the vehicle to plaintiff, John Watson Chevrolet. Koford executed an odometer disclosure statement which represented that the vehicle's actual mileage was 25,637 but that she had not been provided with an odometer disclosure statement when she purchased the vehicle. On June 5, 1993, the plaintiff sold the vehicle to Ms. Williams. Soon thereafter, the police contacted Ms. Williams and informed her that the vehicle was stolen.

The plaintiff was forced to reimburse Ms. Williams for the full purchase price. Subsequently, on March 9, 1995, the plaintiff commenced an action against the defendant, arguing that she intended to defraud Koford and all subsequent purchasers when she sold the vehicle to Koford in 1992 without either executing an odometer statement or telling Koford that the VIN number had been altered. The defendant moved to dismiss the complaint as time-barred, arguing that the cause of action accrued when Koford purchased the car on May 8, 1992, knowing that the defendant had not executed an odometer disclosure statement as required by the Federal Odometer Act. *Id.* at 1008. The *John Watson* court was thus confronted with the

precise question before this Court: "whether the Federal Act's statute of limitations begins to run as to all potential plaintiffs as soon as any plaintiff discovers or constructively discovers a violation, or whether the statute of limitations begins anew every time that the subject vehicle is conveyed." *Id.* at 1007–08 n. 8.

The court then considered the only two cases "that have ever come close to addressing this issue," *id.* at 1008, *Byrne, supra,* and *Attorney General v. Dickson, supra.* Though this Court is not persuaded that *Dickson* is apposite, it is persuaded by the *John Watson* court's reasons for rejecting the *Byrne* rule.

In particular, the *John Watson* court dismissed the *Byrne* court's theory that each violation creates a single cause of action, against which the statute of limitations acts as a bar two years after any person with standing to assert that cause of action discovers or constructively discovers the violation, and that each purchaser in the chain of title could be assumed to have "imputed knowledge" of the facts known by the previous owners of the vehicle. *John Watson,* 890 F.Supp. at 1009 (citing *Byrne,* 488 F.Supp. at 280).

The *John Watson* court concluded that each buyer of the vehicle may assert a cause of action against any prior owner who violated the act. *Id.* (citing *State of Utah by Wilkinson v. B & H Auto,* 701 F.Supp. 201, 203 (D. Utah 1995) (liability arises under the Act each time the Act is violated, and each defrauded purchaser has a separate cause of action)). *See also, Alley v. Chrysler Credit Corp.,* 767 F.2d 138, 142 (5th Cir.1985); *Stier v. Park Pontiac, Inc.,* 391 F.Supp. 397, 401 (S.D.W.Va.1975) (statute does not limit liability to immediate seller of a motor vehicle, but extends liability to any person violating the law).

Thus, the *John Watson* court concluded that the statute of limitations begins to run on an action against any prior owner who violated the Act when the plaintiff discovers or constructively discovers the violation by each prior owner. Under this theory, the cause of action belongs to each purchaser, who may bring a cause of action against all prior owners who violated the Act.

### 4. Purpose of the Act

 The Court finds that, after considering the purpose of the Act, the rule adopted by the *John Watson* court is the proper one.

#### a. Legislative History

 The legislative history provides:

Because consumers rely upon odometer readings as an index of the condition and value of motor vehicles, title IV mandates a national policy against the disconnecting of, or the setting back of, odometers in order to defraud purchasers of motor vehicles.... By prohibiting the disconnecting or turning back of odometers, title IV would establish a national policy against odometer tampering and prevent consumers from being victimized by such abuses.

Senate Commerce Committee, Motor Vehicle Information and Cost Savings Act, S. No. 92–413, *reprinted in* 1972 U.S.C.C.A.N. 3960, 3962. A defrauded purchaser can recover treble damages. 49 U.S.C. § 32710(a). Thus, the purpose of the statute is to punish anyone who fails to disclose the actual mileage of a vehicle in order to make the vehicle appear to the buyer to be a better purchase, *see e.g., John Watson,* 890 F.Supp. at 1006, rather than simply to provide a means of recovery of damages for a defrauded purchaser. *See also, Stier,* 391 F.Supp. at 400 (purpose of the statute is to punish odometer tamperers and to reward purchasers who discover such tampering and bring it to the attention of the federal courts).

The history is silent with respect to when the cause of action accrues for statute of limitations purposes. Neither does the history specifically provide for or reject the possibility that a defrauded purchaser may bring an action against anyone in the chain of title who violated the statute, once the violation is discovered. However, because the focus of the statute is on punishing those who tamper with odometers in order to prevent further abuse of consumers, rather than on recompensing victims for their actual damages, the better view is that the statute was intended

to allow a defrauded purchaser to bring an action against anyone in the chain of title who violated the Act in connection with the transfer of the vehicle.

### b. Standing

██ At oral argument, the Court raised the issue of whether Plaintiffs had standing to sue the prior owners in the chain of title where there was no allegation that the prior owners made a false statement directly to Plaintiffs. Plaintiffs' Counsel argued that the ultimate purchaser had standing to sue any prior owner in the chain of title who had violated the Act because the Plaintiffs had been actually harmed by each prior owner who violated the Act. In essence, Plaintiffs contend that if one of the owners had complied with the Act, they would not have been harmed because they would not have purchased the vehicle. This argument is persuasive, particularly in light of the factual circumstances of this case. If a defrauded ultimate purchaser could sue only a violator of the Act who directly transferred the vehicle to him, each owner in the chain of title who discovered the violation and then perpetuated the fraud by selling the vehicle without disclosing the violation would be insulated from liability merely because the vehicle was sold many times.

Here, Plaintiffs have alleged that each Defendant auto dealer purchased the car, discovered the violation, then resold the vehicle to the next dealer. If Plaintiffs cannot recover against each wrongdoer in the chain of title, each wrongdoer will be immune from liability. *See Stier,* 391 F.Supp. at 401 (wrongdoer estopped from suing owner who transferred to him). This result would be anomalous in light of the Act's purpose to reward the purchaser who reports a violation and to punish any seller who sells a vehicle with the intent to defraud.

Similarly, to adopt the *Byrne* rule governing the accrual date of the cause of action would be to permit one wrongdoer, by discovering a fraud and failing to report it, to insulate another wrongdoer from liability by running the statute of limitations against him. Consider the following example:

In 1990 A sells a vehicle to B, falsely stating that the odometer reading is accurate. B discovers the truth and sells to C in 1993, also falsely representing the true mileage. C never discovers the true mileage or the false statement and sells to D in 1994. D discovers the true mileage. D's cause of action against B would begin to run when D discovered the true mileage, and thus would not be time-barred if brought within two years of D's discovery. D's cause of action against A, however, would be time-barred because of B's discovery in 1991.

This result would undermine the purpose of the statute, because it would allow the actions of a wrongdoer, B, to immunize A by running the statute of limitations against him long before D ever purchases the car and suffers the harm for which he seeks recovery. Though D might recover his damages from B, A would never be punished. Worse yet, if D did not discover the true mileage until 1996, he would have no cause of action because C, from whom D purchased the vehicle, is not liable, and the statute of limitations had run against all previous owners.

### 5. Conclusion

For the reasons stated above, this Court finds that the view expressed by the court in *John Watson,* 890 F.Supp. at 1009, that "the statute of limitations begins to run as against a potential plaintiff, only when that plaintiff, and not any other purchaser of the automobile, knows or reasonably should know that a violation of the Federal Act has occurred," better comports with common sense and better serves the purpose of the Act. Thus, Plaintiffs' causes of action against each Defendant auto dealer accrued on the date Plaintiff discovered, or in the exercise of reasonable diligence could have discovered, that violation.

Accordingly,

**IT IS ORDERED** denying Defendants' Motion for Judgment on the Pleadings (Doc. 19–1).

**FURTHER ORDERED** denying Defendants' alternate Motion to Dismiss (Doc. 19–2).